FILED

E-filing

JUN 2 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MS. SADO LABTIS Plaintiff,

vs.

HENRY M. PAULSSON, Jr.
Secretary,
Department
of the Treasury Defendant(s).

CASE NO. C 07 3333 RS

EMPLOYMENT DISCRIMINATION COMPLAINT

1. Plaintiff resides at:

   Address  236 B. EAST RED OAK DRIVE

   City, State & Zip Code  SUNNYVALE CA. 94086

   Phone  (415) 297-1708

2. Defendant is located at:

   Address  1500 Pennsylvania Ave. N.W

   City, State & Zip Code  Washington D.C. 20220

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000e-5. Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

4. The acts complained of in this suit concern:

   a. __ Failure to employ me.

   b. __ Termination of my employment.

Form-Intake 2 (Rev. 4/05)                - 1 -

   I  EEOC & EEO Agency's final decision should be
    overturned for the following reasons :

a) All the EEO complaints were reported in a timely manner as they occurred, IF (Investigative File) Affidavit, Page 81.

b) Hearing was denied by Administrative Judge which prevented the witnesses to testify. Please refer to EEOC final decision, page 3, 2nd paragraph .Plaintiff was directed to David Dean, Union President on or about March 2003 and again on 6/23/2003 who in turn gave specific instructions to follow-up on the issues with EEO Manager. Please note that compliance documentation on discrimination, hostility and harassment was sent to Ms Lee, Territory Manager on or about 2nd week of May 2003 via e-mail which is within the 45 day federal requirement to report, but it was neglected.

c) Federal Law Violations transpired which is harsh, unfair and pretextual unsuccessful performance rating was unwarranted and was issued in retaliation with 9/19/2003 termination. Furthermore, Ms Lee shared confidential employment status information about the complainant to the Nurse at US Department of Labor which was unacceptable. Plaintiff has a long track record of having passed employment probationary periods, having been employed for over 2 decades. Plaintiff was promoted from within the same employer to handle a series of probationary periods, completed successfully within approximately 10 years. In the last position, she served as a Bank Officer in Corporate Services for one of the largest banks in the nation and worldwide , serving Fortune 500 companies, Financial Institutions and reporting directly to three Vice Presidents and global bank officers. managing corporate credit and global operations. Furthermore, proof of successful performance is on file with the Agency,

d) Investigative File indicates Probationary period is 12 months. However, complainant was only limited to 7 months in completing Probationary period with pretextual performance review. Please refer to page 3,Chronology 1 Page 6, Chronology Notes 2.

   II STATEMENT OF COMPLAINTS
I EMPLOYMENT DISCRIMINATION

Discrimination due to race, national origin, age, gender, disabling medical condition and in retaliation for complaining of discrimination, all in Violation of Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(c) et seq and the Americans With Disabilities Act.42 U.S.C. 12101

II BREACH OF CONTRACT
 A) Failure to reinstate Complainant when a letter was issued by IRS Workers Compensation Unit in Washington D.C. and US Department of Labor's recommendation to reinstate after Compensable Injury was accepted.

Page 2 of 9

B) Failure to disclose that the job required heavy lifting of boxes, and failure to provide reasonable accommodation with a prior compensable Workers Compensation Injury. Medical reports and legal documents were offered to the Manager but they were denied. This resulted in a Federal Injury the week of 6/3/03 and complainant subsequently injured herself on June 23, 2003. The injury was Accepted and Compensated by US Department of Labor including a reinstatement recommendation letter.

C) In a letter dated 7/16/2003 issued by Ms. Lee to Dr. Sharma, attending Physician to plaintiff, she gave assurance that plaintiff will have her job placement back in place.

III NEGLIGENCE

- Failure to do an Act which is necessary for the protection or assistance of another, whereby, the person is under a duty to do.

a) Duty of Care - Ms. Lee, San Jose IRS Agency Territory Manager failed to protect complainant against unreasonable risk and harm of getting injured on the job due to her failure to provide reasonable accommodation to a medical condition which was disclosed restricting lifting of heavy boxes. She failed to protect her rights against discrimination.

b) Breach of Duty- Failure to conform their conduct to a legally required standard.

Ms. Lee, Territory Manager had the obligation to provide reasonable accommodation who failed to do so. She failed to assist Complainant to prevent further injury and she declined to pursue acceptance of medical and legal documents which were offered to her to implement accommodation.

Further, Ms. Lee failed to provide written performance counseling required to assist plaintiff including denial on basic remedy for hostile work environment. E-Filed project was wrongly assigned to plaintiff and it was the key element used on her pre-textual performance rating.

Tina Armendariz failed to provide reasonable accommodation despite repeated disclosure to her about the Plaintiff's medical condition restricting heavy lifting of boxes. She failed to provide an honest account of the plaintiff's consistent cooperation with her in completing all assigned tasks including assigned projects for military bases. It was alleged by Ms. Armendariz that assigned tasks were not completed which is a lie. Plaintiff was wrongly assigned to operations with Nancy who did not provide required training. Instead she spent most of her time discussing her life story about being married to two military personnel and referred to President Bush as G.W. When plaintiff exercised her freedom of speech and said it was necessary to defend the safety and freedom of every American and people in the world who values freedom, she added, it was simply a matter of what G.W. preferred. Being a new employee to the Federal Agency, plaintiff fails to understand why somebody married to military personnel receiving all the benefits would say something to that effect. In another exchange of opposing arguments on my side with Mr. Yee, he stated that regardless of whether he is the boss (referring to President Bush), he is wrong with the strategy.

Throughout my employment at the IRS, plaintiff has been vocal in expressing political

Page 3 of 9
affiliation and opinions concerning political matters. These includes views on terrorism
where her niece barely saved her life in New York on 9/11, support of the pro-life movement
and conservative moral standards. These views, accordingly, well known within the office
and by management and were opposed by majority of the staff members. The plaintiff
believes that it was a further factor in management's singling her out and ultimately issued
an adverse employment action. As a result, plaintiff noticed drastic hostility in the workplace,
and bogus feedback on her performance followed Clearly, retaliation and disparity was
apparent, a violation of freedom of speech.
EEO Manager, Gerald Stringer failed to disclose honestly that plaintiff specifically expressed
her intent to pursue the EEO complaints within the timeframe required.

c) Proximate Cause - The breach of duty as described contributed to the proximate
legal cause of Complainant's injury and termination of all employee benefits and
compensation which were needed by the plaintiff in order to recover from the injury.

d) Damages. - Plaintiff suffered actual harm to herself that is measurable and compensable
in monetary damages.

IV DEFAMATION
Pretextual performance criticisms has placed plaintiff , who has a long track record of having
passed employment probationary period , up to scorn or ridicule in the eyes of a substantial
number of respectable people in the community and future employers. I was informed that
Ms Lee disclosed private information concerning my work performance to a Department of
Labor nurse, Rvaun Miller, who had no legitimate business interest in knowing of same,
which constitutes a violation of her rights to privacy as guaranteed by California's
Constitution, Article 1, #1.Ms.Lee reportedly told Nurse Miller that she was performing
poorly for the I.R.S., which allegation the plaintiff adamantly dispute.

FACTUAL BACKGROUND :
On or about October 15, 2002, complainant was hired by the I.R.S. as a Tax Specialist, and
had approximately 7 months tenure before initial injury the week of 6/3/2003 and subsequent
injury on 6/23/2003 due to the fact that reasonable accommodation was denied despite
repeated request for accommodation. Medical records and legal documents were disclosed
and directed to Territory Manager who did nothing to protect the plaintiff to further injury
and discrimination on the job, IF (Investigative File)

October 16, 2002 - /Chronology Note 1) Introduction to job description by Carlos Zepeda,
hiring manager, but not the same Manager who plaintiff reported to and certainly not the
same Manager who prepared her review and who provided a different interpretation of what
was exceeded and what was successful. Further, Critical elements of the job was given to
Plaintiff by Ms. Lee the week of June 13, 2003 when unsuccessful performance review was
released instead of providing it at the beginning of her work relationship with the Plaintiff.

---

Chronology Notes 1
1) Agency Stated: On 10/15/2002 Agency provided Plaintiff with critical elements of the job.

Page 4 of 9

On or about 1/25/03, plaintiff was assigned a project which is beyond the scope to what she was hired. She spent 30 minutes for two days with Nancy, E-File Staff, attempting to train & most of the time was spent listening to her life story with 2 previous military personnel,

James Kinsey witnessed that training, a key element required in order to satisfy completion of the Employee Tax Returns Project was not given to the Plaintiff. Mr. Kinsey stated that plaintiff was unjustly treated with the assignment of the E-File project because she had never been given a complete formal training and that she was also new to the IRS. This was also one of the main issues brought to the attention of EEO Manager where plaintiff demonstrated to him that she was a victim of disparity in treatment, Affidavit , Pg 81.

On or about January 2003, Staff Meeting, Josie Martinez, E-File Project Account Manager, confirmed that Plaintiff was wrongly assigned with the project considering complexity and the fact that plaintiff was new to the department. Louise Seibel, Senior Tax Specialist confirmed that a more senior associate should handle the project. Further, Valerie Rodriquez, Senior Staff Assistant to Ms, Lee , who handled the E-File project in a prior year, agreed and confirmed the need to re-assign and advised plaintiff to decline the project.

On or about February 2003, Plaintiff disclosed disabling manual limitation to Stella Lee as a result of an industrial injury (prior to her assuming duties with IRS) The injury precluded lifting and she advised Stella of medical certification that had been submitted to an attorney who was handling the case. She also gave her consent to voluntarily provide the name of the attorney for follow up and documentation. Disclosure was done more than once, Affidavit, Pg 76.

From February to March 2003, plaintiff complained to Ms. Lee concerning the amount of heavy lifting that was being required of her and that she had a manual lifting restriction. Plaintiff was repeatedly asked to lift heavy boxes of sales materials and bags of laptop computers, which was causing lower back pain due to an existing medical condition. Plaintiff requested for her to be provided an accommodation by limiting the amount of lifting to no more than five pounds. Ms. Lee responded by asking questions about age and started assigning additional manual tasks to other older employees within the department including Ruth Boring. Ms. Lee stated that Plaintiff should be flexible particularly with lifting and other physical duties and suggested that Plaintiff should consider another job, thereby denying the request, Affidavit, Pg 78.

Page 5 of 9

On or about March 2003, when Ms Lee denied plaintiff's rights to be accommodated for disabling limitation in lifting, at that time, the plaintiff sought assistance due to mounting hostility in working conditions originating basically on denied accommodation. It was further explained that when plaintiff accepted the job, there was no indication of any heavy lifting required for the job. Ms. Lee never made any attempt at all to provide any alternate consideration. Shortly thereafter, she noticed immediate retaliation in verbal hostility with interactions and disparity in treatment, Affidavit pg78.

On or about April 2003, these violations of plaintiff's worker's rights were reported to Gerald Stringer, EEO Manager Mr. Stringer who required the plaintiff to simply wait for the performance review to be issued, then, provide him with written documents on the resulting performance review which was e-mail to him on 6/23/2003.
 A copy of the e-mail to Gerald Stringer was also sent to Ms Lee. In summary, EEO management and Ms. Lee were aware of the discrimination and hostile work Environment which resulted in the issuance of retaliatory unsuccessful rating in retaliation for EEO report made Affidavit, pg 81.

Affidavit executed 8/4/04 (Line 64 Page 3) - Please note hostile work environment were witnessed by more than one co-worker (Affidavit Line 76 Page 3 and Affidavit Line 214 Page 8), and not simply rolling of the eyes. Importantly, it is absolutely before alleged performance deficiency report issued 6/13/03, retaliation for EEO report. The Agency micromanaged plaintiff, looking for any mistake, no matter how minute to build a case against her for termination., This was different than the treatment of other younger, non-Filipino employees, without disabling restriction in lifting. The extreme scrutiny and disparate treatment led to her injury on the job in the first place. Further, she had to subject herself to hostility and denial on reasonable manual accommodation. When she complained, no investigation was performed or remedial action taken by the Agency.

Week of June 3, 2003, Chronology 2 -Initial cause of low back strain injury. Plaintiff was assisting Tina Armendariz with the VITA computers when she had a lifting accident that caused initial trauma of pain. One of the other employees directed her to the first aid kit where she took some pain pills. See Affidavit executed 8/4/04 (Page 6, Line 171) Federal Investigator, B.T. Washington. Please Refer to affidavit on plaintiff's rebuttal to alleged critical elements deficiency on time utilization, work place interaction and work management, a frivolous work evaluation.

June 13, 2003 -See Chronology note1,Page 3 Plaintiff received the critical elements of the job from Ms. Lee the week Of 6/13/2003, basically the same week that she issued Plaintiff's FIRST PROGRESSIVE REVIEW - WITHOUT ANY PRIOR PROGRESSIVE COUNSELLING ON CRITICAL ELEMENTS OF ALLEGED JOB PERFORMANCE DEFICIENCY, (Affidavit Line 195,IF) including
discussions of what she expected. Clearly , she never provided on-going progressive

counseling of what was deficient with the alleged performance, except 6/23/03 note on E-File data entry which has been claimed by several witnesses that it was not part of what plaintiff was hired for with IRS/SPEC and confirmed plaintiff was not treated fairly with this specific assignment basically due to lack of required training .

---

Chronology Note 2
Agency stated: Importantly performance review took place 10 days before plaintiff's compensable injury. Initial injury was the week of 6/3/03, before plaintiff was issued the 6/13/03 unsuccessful performance review. Reference is made to Affidavit, Pg 6 executed on 8/4/04 by EEO Investigator. This was a direct result of cumulative herniation from lifting which precipitated plaintiff's disabling compensable injury on 6/23/03 which took her off work immediately by a certified doctor. Then, what follows next, to reiterate, is the letter of Termination on 9/19/2003 which became effective that day. This proves the fact that no opportunity was given to plaintiff to return to work after she returned from her compensable injury, despite plaintiff's requests for reasonable accommodation for her disabling medical condition and to be restored to her former job. June 3 injury was included as part of the accepted letter from US Department of Labor. Plaintiff spoke to then acting manager Louise Seibel on her job restoration request who indicated her approval subject to Ms. Lee's approval which was denied by Ms. Lee.


These are the same co-workers plaintiff worked with and the same staff who reported to Carlos Zepeda, hiring Manager who released the job description. Considering that plaintiff was a new employee of the IRS, she could not have guessed what critical elements were expected from Ms. Lee's management style and her interpretation of " successful performance". Therefore, Ms Lee should have shared the critical elements of the job with plaintiff prior to coming on board with San Jose office, as she routinely did with other employees and with IRS/SPEC to justify interpretation ramifications of critical performance elements . The terms and conditions of employment agreement that plaintiff accepted obviously reflects inconsistent critical elements to what was implemented by another Territory Manager. Therefore, the terms of plaintiff's probation was erroneously implemented by Ms. Lee and has violated and harmed plaintiff as an employee of the Federal Agency. Plaintiff complained about the pretextual performance evaluation that she received, which she was retaliated against for her complaints of discrimination and harassment suffered at the workplace. Plaintiff's complaints were never followed up on and she was not able to "stay on top of her complaints" to insist on an investigation and that appropriate remedial action be taken due to the fact that she suffered a compensable injury on 6/23/2003 and was then terminated prior to returning to work and on the verge of her returning to work, due to the fact that she suffered the compensable injury.


On 09/19/2003, while on medical leave due to a  Federal work related injury which was accepted and compensated by US Department of Labor,  all employee benefits and compensation was terminated with only 7 months of completed work hours ( Pretextual Unsuccessful Rating on performance is not justified with just 7 months of completed work hours for a 12 month probationary period)  due to the work related injury as a direct result

Page 7 of 9

of failure to accommodate. This injury has caused permanent disabling medical condition as documented by Dr Sharma and Dr Emeka Nchekwube , IF file. The disabling effect of this medical condition, CHRONIC LOWER BACK PAIN FROM DISC HERNIATION should have been accommodated by SJ Federal Agency under ADA, 504 of the Rehabilitation Act of 1973.This was a direct violation of rights with the termination on 9/19/2003. Plaintiff was subjected to discrimination including unwarranted stereotype using racial disparity. Ms Lee, Territory Manager stated that with part of the race as Filipino, plaintiff can only be good in "nothing else "but to do outreach in a Filipino community. Plaintiff was treated with disparity, having been subjected to a hostile environment due to disabling condition and was ultimately rated as uncooperative due to disabling condition and the ultimate retaliation with the issuance of a pretextual performance report on 6/13/2003,all in violation of Federal laws. This retaliatory employee action by Ms Lee such as unwarranted negative evaluation constitutes adverse employment action sufficient to give rise to retaliation cause of action under Title VII. Further, I twice requested that Ms. Lee not speak to me in a hostile and demeaning tone. Despite plaintiff's request, Ms. Lee continued to single her out and to repeatedly speak to her in this harsh and unreasonable manner including in the presence of co-workers and in staff meetings. This further created a hostile work environment for the plaintiff, made the performance of duties much more onerous and difficult and further interfered with opportunities for advancement within the I.R.S. Ms. Lee, in contrast, favored Chinese employees and did not subject same to such harsh, intimidating or demeaning treatment. Ms. Lee did not allow plaintiff equal access to her for the necessary training to perform her job as she did for her Chinese peers. Plaintiff's Chinese peers were also frequently commended by Ms Lee without achieving any significant accomplishment, while Ms. Lee was pretextually critical of plaintiff's work performance and ignored significant contributions.


Insert to a Breach of Duty by Territory Manager, Page 2

On or about February to June 2003, plaintiff was treated with hostility and harassment. Territory Manager had constructive knowledge of unwelcome annoyances in the workplace including distracting repetitive telephone calls. This was even documented in the annual compliance report. This was not investigated nor resolved by EEO office after several reports were made.
Retaliation continued without any remedial action.


On or about February 2003 - June 2003, As an unmarried, female employee, plaintiff was repeatedly asked out on dates by male employees, many of whom would crowd at her workstation to talk to her. Plaintiff, however, was subjected to quid pro quo sexual

harassment, - Unwanted solicitations to be alone with Mr. Albert Yee, pervasive enough as having caused intimidation at work, had unwelcome impact on job related issues, advances to be alone with Mr. Yee and work distractions witnessed by Ms Lee when she had to wait most of the time to see plaintiff at her desk while Mr. Yee was there frequently at the same time.

Plaintiff's performance review was affected by it because of discussions she had with Mr. Yee, after repelling his advances, where he implied she will not be able to achieve a permanent status and keep plaintiff's job. He was told directly since December 2002 while having lunch that his advances made the plaintiff uncomfortable, as he was a married man and that she was not at the workplace to have an affair but to do her job. What was disturbing was Mr. Yee's persistence to once again made an intimidating invitation to have plaintiff pick him up, despite initial resistance of the invitation, and to drive him to a place which is 2-3 blocks away from plaintiff's residence, where he indicated that his wife was out of the country, and asked her what she did for fun thereafter.

As an example of plaintiff's concern about the performance review, there was a situation where Mr. Yee and plaintiff had a conversation about her wearing gloves to protect herself due to the frequency 0f paper cuts that was occurring. Mr. Yee was very supportive and made specific recommendations as to what gloves she should use. Imagine the shock and consternation on the part of the plaintiff when during her performance review, Ms. Lee brought up to the plaintiff's attention her wearing of gloves as a negative action. She can only believe that Mr. Yee in fact intruded on performance related issues relative to the plaintiff as he constantly asked her to be alone with him despite the fact that plaintiff had given him a push back gesture on or about December 26, 2002 when he asked the plaintiff to be alone with him for lunch. He then said " I do not bite you don't need to be so distant from me" expressing disappointment for repelling advances.

To the best of plaintiff's knowledge, Ms. Lee could only gain knowledge of her wearing gloves as a result of having spoken with Mr. Yee on the subject. Clearly, they were " ganging up" on the plaintiff based on her having repulsed Mr. Yee's advances. Such negative comments ( about wearing of the gloves ) had no impact on the efficiency and competency with which the plaintiff carried out her job.

Page 9 of 9

As a result of the agency's conduct, I have been caused to suffer wage loss, loss of employment related benefits, adverse employment reputation, attorney's fees and costs, medical expenses and severe and extreme emotional distress. I am seeking as a remedy that I be paid as follows:

a) The Cost Avoidance Information outlined in the job offer reinstatement letter from the Chief,Workers' Compensation Center, Department of the Treasurey, I.R.S.,Washington, D.C. 20224 in the amount of $453,445.

b) Maximum Compensatory amount to the full extent of the law to cover as follows:
   - Pain and suffering      - future pecuniary losses
   - Inconvenience           - loss of enjoyment of life
   - Mental anguish

c) Injunctive relief, payment of full back pay and benefits accrual retroactive to the date of termination, reimbursement for all legal and medical expenses incurred as a result of the agency's misconduct.

d) Ten letters of recommendation for future employers should be issued to the Plaintiff.

Respectfully Submitted,

*[signature]*
Ms. Sado Labtis
Enclosures: as cited

1   c. __ Failure to promote me.
2   d. ✓ Other acts as specified below. including b.
3   Pls. See attachments.
4   _____
5   _____
6   _____
7   _____
8   _____

9  5.  Defendant's conduct is discriminatory with respect to the following:
10     a. __ My race or color.
11     b. __ My religion.
12     c. __ My sex.
13     d. __ My national origin.
14     e. ✓ Other as specified below. This includes a, c & d.
15  Pls. See attachments.

16  6.  The basic facts surrounding my claim of discrimination are:
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____

25  7.  The alleged discrimination occurred on or about Jan 2003 - June 2003
                                                       & Dec. 2003
26                                  (DATE)

27  8.  I filed charges with the Federal Equal Employment Opportunity Commission (or the
28  California Department of Fair Employment and Housing) regarding defendant's alleged

Form-Intake 2 (Rev. 4/05)          - 2 -

1  discriminatory conduct on or about ___Dec. 2003 - May 2004___.
2                                    (DATE)

3  9.   The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter
4  (copy attached), which was received by me on or about ___4/6/07___.
5                                    (DATE)

6  10.  Plaintiff hereby demands a jury for all claims for which a jury is permitted:
7       Yes _✓_    No ____

8  11.  WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
9  including injunctive orders, damages, costs, and attorney fees.

10
11  DATED: ___6/18/2007___         _____[signature]_____
12                                 SIGNATURE OF PLAINTIFF

13
14  (PLEASE NOTE: NOTARIZATION        ___Ms. Marilyn Sado Labtis___
15  IS NOT REQUIRED.)                 PLAINTIFF'S NAME
16                                    (Printed or Typed)

Form-Intake 2 (Rev. 4/05)            - 3 -

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Marilyn S. Labtis,
Complainant,

v.

Henry M. Paulson, Jr.,
Secretary,
Department of the Treasury,
Agency.

Request No. 0520070341

Appeal No. 0120055831

Hearing No. 370-2005-00209X

Agency No. 042101M

## DENIAL

Complainant timely requested reconsideration of the decision in *Marilyn S. Labtis v. Department of the Treasury*, EEOC Appeal No. 0120055831 (February 2, 2007). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 0120055831 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate

2                                                                    0520070341

United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

<u>RIGHT TO REQUEST COUNSEL</u> (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

_____*Carlton M. Hadden*_____
Carlton M. Hadden, Director
Office of Federal Operations

___APR 0 3 2007___
Date

3                                                                                           0520070341

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Marilyn S. Labtis
236 B East Red Oak
Sunnyvale, CA  94086

Mariam G. Harvey, Director, EO Programs
Office of Equal Opportunity & Diversity Division
Department of the Treasury
1750 Pennsylvania Ave., NW  Rm: 8157D
Washington, DC  20220

APR 0 3 2007
Date

_____
Equal Opportunity Assistant