ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  1 of 13

FILED

## ADDENDUM  TO INITIAL COMPLAINT FILED JUNE 25, 2007

2007 AUG 29  P 4: 06

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

CIRS

| | |
|---|---|
| **SADO  LABTIS, Plaintiff** ) | |
| ) | |
| **V.** ) | **CASE NO. C 07 3333 – RS** |
| ) | |
| **HENRY M. PAULSON, Jr. Defendant** ) | **EMPLOYMENT DISCRIMINATION** |
| **Secretary** ) | **COMPLAINT- ADA** |
| **Department of the Treasury** ) | |
| ) | |

## STATEMENT OF COMPLAINTS:

### I-A   NATURE OF THE ACTION

This is an action under Title I of the Americans With Disabilities Act of 1990 and

Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on

the basis of disability and to make whole Sado Labtis. Defendants discharged

complainant, a qualified individual with  chronic low back strain(disc herniation),

resulting from compensated federal work injury, from her position as Tax Specialist,

because of the disability, Ex 2,3 and Ex 4. Further, Ex 1 - 14 pages, show

reinstatement recommendations  from U.S. Department of Labor and Chief of

Worker's Compensation with corresponding Certified Medical recommendation,

which were not followed by the Agency, despite a timely EEO complaint Ex 3

(2  pages) , as confirmed by  EEOC' s final  decision in conjunction with AJ' s final

order).

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  2 of 13

## JURISDICTION AND VENUE

1) Jurisdiction of this Court is invoked pursuant to 28 USCA 451,1331, 1337, 1343

and 1345.This action is authorized and instituted pursuant to Section 107(a) of the

Americans With Disabilities Act of 1990 ("ADA"), 42 USCA 12117(a), which

incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 USCA 2000e-5(f)(1) and (3),and pursuant to Section 102

of the Civil Rights Act of 1991, 42 USCA 1981a.

2)  The employment practices hereafter alleged to be unlawful, Venue in the

Northern District of California is proper in that some, if not all, of the wrongful acts

alleged herein occurred within the County of Santa Clara.


At all relevant  times, Defendant has been and is  a California Federal Agency doing

business in the State of California and the City of San Jose, and has continuously

had and does  have at least 300 employees.


At all relevant times Defendant has continuously been engaged in an industry

affecting commerce within the meaning of Section 101(5) of the ADA, 42 USCA

12111(5), and Section 107(a) of the ADA, 42 USCA 12117(a),which incorporates by

reference Sections 701(g) and (h) of Title VII, 42 USCA 2000e(g) and (h).


At all relevant times, U.S. Department of Treasury has been a covered entity under

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  3 of 13

Section 101(2) of the ADA, 42 USCA 12111(2).

## STATEMENT OF CLAIMS

Sado Labtis filed a Charge with the EEOC alleging violations of Title I of the ADA by Defendants. All conditions precedent to the institution of this lawsuit have been fulfilled.

Since at least 9/19/2003, the Departmet of Treasury in San Jose have engaged in unlawful employment practices  in violation of the ADA Sections 102(a), 102(b)(1) and 102(b)(5)(B), 42 USCA 12112a, 12112(b)(1)  and 12112(b)(5)(B), at their San Jose, California facility. These practices include but are not limited to Defendant's discharge of plaintiff, a qualified individual with a disability, who was able to perform the essential function of her position with or without reasonable accommodation, because of her disability, chronic low back strain, disc herniation; and Defendant's discharge of plaintiff based on the need to make reasonable accommodation to her possible future physical impairments.

The effect of the practices complained of above has deprived Sado Labtis of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabling physical condition.

The unlawful employment practices complained of above were and are intentional.

ADDENDUM to Complaint Filed 6-25-07, U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  4 of 13

**PRAYER FOR RELIEF**

**WHEREFORE, the Plaintiff respectfully prays that this Court:**

**A) Grant a permanent injunction enjoining the Department of Treasury, its officers, management personnel, employees, agents, successors, assigns; and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of disability.**

**B) Order Defendants, to institute and carry out policies, practices, and programs which provide equal employment opportunities to qualified individuals with disabilities, and which eradicate the effects of past and present unlawful employment practices;**

**C) Order Defendants, to make whole  Sado  Labtis by providing with appropriate lost earnings and insurance premiums, with pre-judgment interest, in amounts appropriate, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to reinstatement of plaintiff to the position of Tax Specialist, grade 9 or higher within contract.**

**D) Order Defendants, to make whole Sado Labtis by providing compensation for pecuniary losses, including but not limited to costs to be incurred for health and life insurance premiums and costs of seeking new employment, in amounts to be determined as appropriate.**

ADDENDUM to Complaint Filed 6-25-07, U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  5 of 13

E) **Order Defendants, to make whole Sado Labtis by providing compensation for**

**non-pecuniary losses, including emotional pain suffering, inconvenience and mental**

**anguish in amounts to be proven as appropriate.**

F) **Grant such further relief as the Court deems necessary and proper; and,**

G) **Grant the plaintiff its costs in this action.**


**I-B  Complaint For Damages for Fraud and Deceit - Intentional Misrepresentation
of Facts Civ. Code 1710(1)**

**The plaintiff alleges:**

1.  **The employee of the Defendant, T. Armendariz is, and at all times herein**

**mentioned was a resident of Santa Clara county, California ,**


2.  **The defendant, is and at all times herein mentioned was, a Federal Agency**

**organized and existing under the laws of the State of California with its principal**

**place of business in San Jose, Santa Clara County, California.**


3.  **The plaintiff is informed and believes and thereon alleges that, at all times herein**

**mentioned, T. Armendariz  was the agent and employee of defendant, and in doing**

**the things herein alleged was acting within the course and scope of such agency and**

**employment and with the permission and consent of the Federal Agency.**

3. The plaintiff is informed and believes and thereon alleges that T. Armendariz,

who made the representations herein alleged, is the Senior Tax Specialist and Acting

Manager of defendant,( SJ IRS Office), who failed to follow reinstatement

recommendation from the Chief of IRS Worker's Compensation and USDOL(Ex 1 ),

and at the time of the making of the representations herein alleged and at all times

herein mentioned was acting within the course and scope of her employment and

authority for that defendant.

4. The plaintiff is informed and believes and thereon alleges that the named

defendant et al as responsible in some manner for the occurrences herein alleged and

that the plaintiff's damages as herein alleged were proximately caused by their

conduct.

5. On or about June 2003, T. Armendariz, Agent and employee of Defendant made

the following representation, the plaintiff's physical injury symptoms did not relate

to a low back injury. This material fact is false because Ms. Armendariz was fully

aware of disclosed lifting restriction by the plaintiff, and yet she continued to use

the plaintiff in repetitive heavy lifting tasks , and at the same time concluded that

assigned tasks was not completed by the plaintiff which is a false statement.

5a. On or about February 2003 - June 2003 and December 2003 , employee of the

defendant, T. Armendariz failed to reveal several incidents of heavy lifting of VTA

computer inventories leading to the gradual low back injury of the plaintiff, she

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  7 of 13

suppressed  true information that plaintiff religiously completed all assigned tasks on

VTA (Volunteer Tax Assistance ) on similar assignments which involved

lifting. The suppression of these facts, led plaintiff to believe that material

information of  task completion and repetitive  heavy lifting was communicated to

Ms. Lee, plaintiff's Manager. This information along with other misleading

feedback on employee E-file  was incorporated into a pre-textual performance

alleged. Carol Galvan, who alleged performance issue on wrongly assigned E-File

project , failed to produce evidence and failed to do due diligence investigation on

critical issues in performance communicated to Ms. Lee. An example is

complainant's encounter with Nancy( Initial Complaint filed  6-25-2007),  who

reported directly to Ms. Galvan. At the same time, gradual disk herniation leading to

chronic low back strain injury could have been avoided which had taken significant

toll in terms of damages  and overall employment reputation for the plaintiff. This is

not acceptable from a federal employee like T. Armendariz et al  where trust and

fiduciary relationship was expected as authorized agent of the principal, a Federal

Agency.


6. The representations made by the Defendant's employee were in fact false The true

facts as follows:


7. The false representation that VTA projects  were not completed  is unfair and

reflects deceit. In fact, the repetitive manual  lifting arising from all the VTA

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg 8 of 13

assignments caused the initial gradual damage to the plaintiff in the form of disc

herniation resulting in gradual low back strain. Work injury on the  week of

6/03/2003 and on 6/23/03 was the final impact of repetitive lifting originating from

this false representation of the defendant's employee, T. Armendariz  that assigned

VTA tasks with restricted lifting  and alleged it was a performance issue and that

the  projects were not completed.  This  false representation was with the intention

to deceive and defraud the plaintiff and to induce the plaintiff to act in reliance on

these representations to her Manager in the manner hereafter alleged. Further, the

failures to disclose information, suppressions of task completion and significant

lifting of work inventory leading to gradual low back disc herniation ( plaintiff's

compensated work injury) ,herein alleged to have been made by the employee of the

defendant were made with the intent to induce the plaintiff to act in the manner

herein alleged in reliance thereon . Plaintiff relied on true declaration that all VTA

tasks including tax returns for Military personnel were completed and that lifting

was imposed upon her even beyond 25 lbs. Plaintiff satisfied every whim that T.

Armendariz wanted  in a VTA project  and yet false information was submitted to

the plaintiff's Manager, Ms. Lee, stating that VTA assignments were not completed.

This  includes failure to disclose inordinate incidents of lifting. When reintstatement

letter, Exhibit 1  was received by T. Armendariz as Acting Manager in December

2003, she failed to act on it nor  disclose material information of heavy lifting leading

to chronic low back strain  after compensated injury. This disabling physical

condition caused by restricted lifting, clearly, is material background information .

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  9 of 13

8. The plaintiff, at the time these representations were made by the defendant's

employee and at the time the plaintiff took the actions herein alleged, was not aware

of the falsity of the defendant's representations and believed T Armendariz to have

provided  true  declaration - which means that plaintiff relied on a true account that

VTA  assignments, VTA lifting inventory  tasks and E-File projects were completed

efficiently  which was misrepresented by Ms. Armendariz and E-File group. Had the

plaintiff known the actual facts, she would have  the opportunity to rebut and

protect herself from damages. Further, Kaiser report, Ex 2, showed erroneous and

misleading information that was used to reflect the fact that complainant was not

capable to perform. Ex 1 , page 5 from Dr.Emeka Nchakwube showed remaining

physical impairment but with the capacity to perform. Ex 4 confirmed the fact that

chronic low back strain from the compensated federal work injury permanently

lingers and it is not a temporary disabling condition. However, the fact remains that

complainant is a qualified Tax Specialist with lingering physical impairment as a

result of federal injury.


9. As a proximate result of the fraudulent conduct of the defendant's employee and

agent, as herein alleged, the plaintiff suffered damages with federal work injury

resulting in disc herniation and chronic low back strain. Plaintiff suffered significant

damage in the amount of $453,445 in total loss of compensation as outlined in the

letter from Shirley L. Smith, Chief of Worker's Compensation Center, Department

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  10 of 13

of the Treasury, IRS, Washington, D.C., Ex 1, page 14.

10. The aforementioned conduct of the defendant was an intentional

misrepresentation, deceit, or concealment of a material fact known  to the defendant

with the intention on the part of the defendant(s), hereby depriving the plaintiff of

her legal rights or otherwise causing physical injury, and was despicable conduct

that subjected the plaintiff to a cruel and unjust hardship in conscious disregard of

the plaintiff's rights, so as to justify an award of exemplary and punitive damages.


WHEREFORE, the plaintiff prays judgment as follows:

1. For general damages in the sum of $300,000.

2. For special damages for what is stated in Ex 1, $453,445 in total loss of

   Compensation.

3. For punitive damages in an amount appropriate to punish the defendant(s) and


   deter others from engaging in similar misconduct.

4. For costs of suit incurred herein.

5. For such other and further relief as the  judge and the court may deem proper;

and

6. For disciplinary action to Federal employees involved in this cruel and unjust

hardship in conscious disregard of the plaintiff's rights as deemed appropriate up to

and including termination.

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  11 of 13

## ADDENDUM TO INITIAL COMPLAINT FILED 6-25-2007
## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFRONIA

| | | |
|---|---|---|
| **SADO LABTIS, Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE No C 07 3333** |
| | ) | |
| **HENRY M. PAULSON, JR.,Defendant** | ) | |
| **Secretary** | ) | **MOTION TO SEAL ALL RECORDS** |
| **Department of Treasury** | ) | |

**MOTION TO SEAL ALL RECORDS PERTAINING TO THIS CASE WITH**

**RESTRICTED PUBLIC ACCESS to RECORDS OR ANY PROCEEDING WITH**

**THE EXCEPTION OF AUTHORIZED PERSONNEL. Pursuant to Cal. Rules of**

**Ct.,Rule 2.551(a), Rule 2.551(d),. With respect to the procedure for sealing otherwise**

**public records under Cal. Rules of Ct., Rule 2.550 et seq., the following definitions**

**apply Cal. Rules of Ct., Rule 2.550(b). Sealed records must be securely filed and kept**

**separately from the public file in the case. Cal Rules of Ct., Rule 2.551(f).**

**Further, in this event, the court may exclude all persons from the proceeding except**

**the officers of the court, the authorized parties, their witnesses, and counsel. Fam.**

**Code 214; Code Civ Proc. 124 (general "open court" statute expressly excepting**

**proceedings directed to be private under Fam Code 214. )**

**For the following reasons :**

**I Safety and Security**


**1) The following information  were disclosed:**

ADDENDUM to Complaint Filed 6-25-07,U.S. District Court, Dated . 8-17-07,
Sado Labtis P. O. Box 2736, Cupertino, CA. 95015
Pg  12 of 13

- Complainant's brother is a retired  National Intelligence Officer for the

Philippine government's former National Intelligence and Security Administration.


 - Former P I Ambassador to Saudi Arabia's Eulogy to Complainant's cousin -

Complainant's absence to a Volunteer Work sponsored by IRS  due to her

attendance of the Memorial service for her cousin, Retired Public School

Supervisor, assistant to Regional Superintendent in P I. Complainant wanted to

thank the former P I ambassador to Saudi Arabia on behalf of the family for the

Eulogy and act of kindness rendered to family during hours of bereavement.

Complainant's absence was rated as being uncooperative despite family emergency.


This information was E-mailed to complainant's manager, Stella Lee. Further, not a

single soul within San Jose federal agency expressed any act of sympathy nor kind

gesture, instead , performance issue of  being uncooperative was rendered.


 -As disclosed, God daughter and niece, former Intern to the United Nations in New

York, barely survived a tragic terror attack on a great nation like U S A on

9/11/2001. She is married to the Director of Gen. George Patton Museum, Fort

Knox, Kentucky.

ADDENDUM to Complaint Filed 6-25-07, U.S. District Court, Dated : 8-17-07,
Sado Labtis  P. O. Box 2736, Cupertino, CA. 95015
Pg  13 of 13

II Based on information from the media, terror attacks made by the brother of a

resident in Sunnyvale who was arrested recently, were linked to several bombings in

the Philippines.

- A relative of a terrorist was arrested in Sunnyvale where the plaintiff resides.

Your immediate consideration and attention in this highly sensitive matter is

appreciated.

Respectfully submitted,

M. Sado Labtis

(415) 297-1708





**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**

Page 1

**Agency-Wide Shared Services**

DEC 18 2003

**Response Due:**
**20 Days**

MEMORANDUM FOR: Stella Lee
                          W&I SPEC Territory Manager

FROM:            *Paula J. Elise*
                 *for* Shirley L. Smith
                 Chief, Workers' Compensation Center

SUBJECT:             Request for a Job Offer for Marilyn Labtis

RECEIVED
2 3 2003
INTERNAL REVENUE SERVICE
TAXPAYER EDUCATION
SAN JOSE DISTRICT

The Workers' compensation Center has identified a former employee from your office who suffered a work-related injury, but who has now sufficiently recovered to be able to work in some capacity. Attached you will find pertinent information on this individual (Attachment 1) and her latest work restrictions.

The Service is obligated to restore fully or partially recovered employees to their former positions or an equivalent one as noted in Attachments 2 and 3. Additionally, on July 2, 1999, President Clinton issued the Federal Worker 2000 Presidential Initiative (Attachment 8) tasking federal agencies with reducing workplace injuries and associated costs. On March 15, 2000, the Director of Personnel Services issued a memorandum (Attachment 9) to all managers outlining management's responsibilities in returning injured claimants back to work. As the last employing office, you are responsible for identifying suitable positions, providing reasonable accommodations, and making or coordinating a job offer.

Please proceed with identifying appropriate positions for Marilyn Labtis and make an appropriate job offer as described below. You should rely on your Staffing and Position Classification Specialists and your Reasonable Accommodations Coordinator for support and assistance in identifying suitable positions and making reasonable accommodations in order to return this individual to work. See Attachment 4 for guidance. The individual in your office designated with the responsibility of coordinating the placement of this individual should not limit the search for suitable positions within his/her own division. If necessary, he/she should contact all other divisions, as well as other IRS offices within the individual's current commuting area or the locale where the claimant was last employed.

181

2

When a suitable position has been identified, the employing office must prepare a written job offer. Attachment 5 is a sample letter that may be used in making job offers. The individual is required to respond in writing to the job offer within 15 days. Attachment 6 is a sample acceptance/declination statement, which must accompany the job offer letter.

When the job offer letter is issued, please provide our office with a copy of the job offer and the position description for submission to the Department of Labor. Attachment 7 is a cost avoidance report on Marilyn Labtis that provides information concerning the cost to the agency if you do not offer employment to her. Unsuccessful attempts to identify suitable positions for this individual should be well documented and a copy provided to the Workers' Compensation Center for placement in the individual's workers' compensation file. This documentation will demonstrate that our agency has made every reasonable effort to re-employ recovered individuals as required by law.

Please keep our office informed of your efforts. If you have any questions or need additional assistance, please contact Debbie Corbin, Case Management Specialist, at (804) 771-9209. You may also write to us at: IRS, Workers' Compensation Center, 11 South 12th Street, Room 110, Richmond, Virginia 23219-4035.

Attachments (9)

ATTACHMENT  1

## CLAIMANT FACT SHEET

NAME:             Marilyn S. Labtis

ADDRESS:          236 B East Red Oak Drive
                  Sunnyvale, CA  94089

ACCEPTED INJURY/CONDITION:       Low Back Strain

LAST POSITION OF RECORD:

      TITLE:                Tax Specialist

      SERIES/GRADE:         GS-526-5 Step 01

      DIVISION:             Wage and Investment (SPEC)

WORK RESTRICTIONS:

Can work 4 hours per day with an anticipated increase to a full 8-hour workday
No prolonged sitting, walking or standing
No repetitive bending
No pushing or pulling
Lifting up to a maximum of 10 pounds

Attached is the work restriction information dated 10/29/03 provided by
Dr. Emeka Mchekuube indicating that these restrictions will apply for one month.

ADDITIONAL INFORMATION:

Dept of Labor has assigned a nurse Ravn Miller to assist with the return to work
effort.  RN Miller can be reached at 650-728-5640.  Please contact her
immediately as these nurse intervention services are available for only a limited
time.   Please be advised that in addition to the $ 453,445 of projected lifetime
compensation costs in this case should we not return her to work with our
agency, the costs of the rehabilitation efforts and any further rehabilitation
training will be charged back to IRS.  Consequently, it is imperative that every
possible effort be made to offer Ms. Labtis a suitable position *as closely as
possible to her Date of Injury grade* as quickly as possible.  If Ms. Labtis
refuses our job offer without a valid reason, her compensation payments may be
terminated.

File Number: 132081874
LD1-O-J

**U.S. DEPARTMENT OF LABOR**

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
PO BOX 8300        DISTRICT 13
LONDON KY 40742-8300
Phone: (415) 848-6700

December  3, 2003

Date of Injury: 06/23/2003
Employee:       Marilyn Labtis

US DEPARTMENT OF TREASURY
INTERNAL REVENUE SERVICE
WORKERS COMPENSATION CENTER
11 SOUTH 12TH STREET SUITE 110
RICHMOND, VA 23219

Dear Sir/Madam:

The treating physician of Ms. Labtis  indicates she is able to return to work 4 hours a day with
the restrictions indicated in the enclosed medical report dated 10/29/03.

If you can provide employment to fit these restrictions, please make an offer of light duty to the
employee. To be valid, any such offer must be in writing and include the following information:

1. A description of the duties to be performed.

2. The specific physical requirements of the position and any special demands of the
workload or unusual working conditions.

3. The organizational and geographical location of the position.

4. The date on which the job will first be available.

5. The date by which a response to the job offer is required.

You should also provide pay rate information and the name and telephone number of the
employee who is coordinating this offer. The job offer should not include any information
regarding the election of OPM benefits, since obtaining an election is solely the responsibility of
this Office. A copy of the job offer should be sent to this Office so we can determine suitability.

If the employee accepts the offer and returns to duty, please telephone this Office and submit a
CA-3 documenting the return to work date.  If the employee rejects the offer, please provide a
copy of this response.

Sincerely,

Diana Bigham
Senior Claims Examiner        RAVN MILLER, RN    FAX 650 728-1729

MARILYN S. LABTIS
236 B EAST RED OAK DRIVE
SUNNYVALE, CA 94086

ME -0W 

**Work Capacity Evaluation**
**Musculoskeletal Conditions**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| Injured Worker's Name (First, middle, last) | OWCP No. | OMB No: 1215-0103 |
|---|---|---|
| Labtis Marilyn | 132081874 | Expires: 08-31-2002 |

Please answer the questions below concerning your patient (named above) for whom the Office of Workers' Compensation Programs (OWCP) has accepted the following conditions: low back strain

1. In many employing establishments, light duty can be made available.
   a. Is there any reason that this person cannot WORK for 8 hours per workday? If so, please provide medical reasons to support your opinion.
   con'd pain (R) leg weakness

   b. If less than 8 hours per workday, how many hours can he/she work? 4h
   c. Do you anticipate an increase in the number of hours this person will be able to work? ☒ Yes ☐ No
   If yes, when will this person achieve an 8 hour workday?
   If no, please provide medical reasons to support your opinion.

   d. How long will restrictions apply? 1 month   e. Has MMI been reached? no

RICHMOND, VA  03 DEC -8 PM 2:11  RECEIVED

2. Please indicate whether this person has any LIMITATION in the activity listed and how many hours this person can perform each activity. If there are limitations in lifting, pulling and/or pushing, please provide the maximum number of pounds that can be handled by this person.

| Activity | Limitation | # of Hours Able to Work | Activity | Limitation | # of Hours Able to Work | Lbs. |
|---|---|---|---|---|---|---|
| Sitting | ✓ Yes | 4 | Pushing | ✓ Yes | 0 | |
| Walking | ✓ Yes | | Pulling | ✓ Yes | 0 | |
| Standing | ✓ Yes | 4 | Lifting | ✓ Yes | 4 | 5-10 |
| Reaching | ___ Yes | | Squatting | ___ Yes | | |
| Reaching above Shoulder | ___ Yes | | Kneeling | ___ Yes | | |
| Twisting | ___ Yes | | Climbing | ___ Yes | | |
| Operating a Motor Vehicle | ___ Yes | | | | | |
| Repetitive Movements: | | | Breaks | | | |
| Wrists | ___ Yes | | Duration | ___ Frequency | | |
| Elbow | ___ Yes | | Duration | ___ Frequency | | |

no prolonged wlx

3. Are there OTHER medical facts, situational factors, equipment or devices which need to be considered in the identification of a position for this person? If so, please explain.
no repetitive bending

| 4. Physician's Name (Type or print) Emeka Nchekwube | 5. Telephone 408 286 0103 |
|---|---|
| 6. Signature | 7. Date 10/29/03 |

The information requested will assist OWCP in determining eligibility to benefits and is required to obtain or retain a benefit (5 USC 8101 et. seq.)

**Public Burden Statement**
We estimate that it will take an average of 15 minutes per response to complete this information collection including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Office of Workers' Compensation Programs, U.S. Department of Labor, Room S-3229, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

DO NOT SEND THE COMPLETED FORM TO THE OFFICE SHOWN ABOVE.    Form OWCP-6c Rev July 1987

ME-OW



ATTACHMENT 2

## RESTORATION OF CURRENT AND FORMER EMPLOYEES WHO HAVE FULLY
## OR PARTIALLY RECOVERED FROM WORK-RELATED INJURIES

Congress mandated restoration rights for employees who fully recover from compensable work injuries when it enacted 5 U.S.C. 8151 (P.L. 93-416, 1974 Amendments to the Federal Employees Compensation Act (FECA). In addition, the legislative history indicates Congress intended that the Office of Personnel Management (OPM) prescribe restoration rights for individuals who partially recover. Congress sought to do everything feasible to compensate and reinstate federal employees injured in the line of duty. If they recovered within a year, re-employment was guaranteed, and if their recovery took longer, all reasonable efforts were to be made to place them in their former job or an equivalent position, and priority was to be accorded them in securing a position.

Title 5 CFR Part 353, Subpart C, entitled "Agency Obligation to Restore," obligates agencies to offer re-employment to current and former employees who have fully or partially recovered from work-related injuries. Pertinent sections of the code are provided in the attached enclosure. A current or former employee, who fully recovers within 1 year, must be restored immediately and unconditionally to his/her former position or an equivalent one. An employee who separated because of a work injury and whose full recovery takes longer than 1 year is entitled to priority consideration agencywide for restoration to their former position or an equivalent one. Agencies must make every effort to restore, in the local commuting area, an individual who has partially recovered from their work injury and is able to return to work in some capacity. Agencies are expected to make a good faith effort to re-employ these individuals.

Title 5 U.S.C. Section 8151 (b)(2) provides that the department/agency which was the last employer shall make all reasonable efforts to place and accord priority to placing the employee in his former or equivalent position within such department/agency. The Treasury Department's Workers' Compensation Policy Handbook states the following:

"Each supervisor is responsible for providing or developing job vacancies commensurate with employee skills, medical limitations and earnings in order to restore injured employees to active duty at the earliest possible date."

186

"The intent is not only to provide the injured employee with productive employment, but to reduce or eliminate the bureau's compensation costs."

Accordingly, the individual's employing office is responsible for identifying suitable positions, providing reasonable accommodations and making job offers to recovered individuals.

ATTACHMENT 3

## RESTORATION OF CURRENT AND FORMER EMPLOYEES WHO HAVE FULLY
## OR PARTIALLY RECOVERED FROM WORK-RELATED INJURIES

Title 5 CFR Part 353, Subpart C, entitled "Agency Obligation to Restore," obligates agencies to restore current and former employees who have fully or partially recovered from work-related injuries.

### FULLY RECOVERED WITHIN 1 YEAR

A current or former employee who fully recovers from a compensable injury within 1 year from the date eligibility for compensation began is entitled to be restored immediately and unconditionally to his/her former position or an equivalent one. Although these restoration rights are agencywide, the employee's basic entitlement is to the former position or equivalent in the local commuting area the employee left. (Sec. 353.301(a))

### FULLY RECOVERED AFTER 1 YEAR

An employee who separated because of a work injury, and whose full recovery takes longer than 1 year from the date eligibility for compensation began, is entitled to priority consideration agencywide for restoration to their former position or an equivalent one. (Sec. 353.301(b))

### PARTIALLY RECOVERED

Agencies must make every effort to restore, in the local commuting area, according to the circumstances in each case, an individual who has partially recovered from a compensable injury and who is able to return to work in some capacity. This could mean reengineeering the former position if feasible or placing the employee in any other position he/she is able to perform.

188

Agencies are expected to make a good faith effort to re-employ these individuals. At a minimum, this would mean treating these employees substantially the same as other handicapped individuals under the Rehabilitation Act of 1973, i.e. they would qualify for consideration under the agency's affirmative action program for employment of the handicapped. If the individual fully recovers, he/she is entitled to be considered for the position held at the time of injury or an equivalent one. A partially recovered employee is expected to seek re-employment as soon as he/she is able. (Sec. 353.301 (d))

## PHYSICALLY DISQUALIFIED

An individual who is physically disqualified for their former position or equivalent because of a work injury, is entitled to be placed in another position for which qualified that will provide the employee with the same status, and pay, or the nearest approximation thereof, consistent with the circumstances in each case. This right is agencywide. (Sec. 353.301(c))

189

*10*

ATTACHMENT 4

## GUIDANCE / RESOURCES FOR RETURNING CLAIMANTS TO WORK

(1) If a Nurse or Rehabilitation Specialist has been assigned to the case by the Dept. of Labor (OWCP), contact him/her immediately. He/She is available to assist you in finding suitable work that is within the individual's work limitations/tolerances. He/She can assist in clarifying work restrictions with the individual's treating physician. Nurses and Rehabilitation Specialists are assigned to cases only for a limited period of time, so it is crucial that you contact them immediately to advise them that our agency is interested in exploring employment opportunities for this individual.

(2) If a Nurse or Rehabilitation Specialist is not assigned, you should carefully review Attachment # 1. Attachment # 1 provides pertinent claimant information including the individual's last position of record and work restrictions. Considering this information, identify any position, at or below the grade level of claimant's last position of record, for which he/she qualifies. Priority should be given to considering this individual for his/her former position or an equivalent grade-level position in any function. If this is not possible, then positions at the next lower grade-level should be considered. Continue your search until a suitable lower graded position is identified.

(3) The search for suitable positions should be within the claimant's current commuting area or in the locale where the claimant was last employed.

(4) Contact your servicing Personnel Office immediately, and ask them to request the individual's OPF from the Federal Records Center. The OPF will be needed to verify pertinent personnel information and to determine the individual's qualifications for positions. Additionally, please ensure that Personnel reviews the OPF to determine if the individual left the service on a disability retirement through OPM. Personnel will need that information in order to process the SF-52 and to take other appropriate action.

In considering various positions, you may need to contact the following resource personnel for assistance:

**Staffing Specialist** - To determine current vacancies, qualification determinations, pay setting, processing SF-52s.

**Position Classification Specialist** - To identify positions than can be modified to accommodate the identified medical restrictions: to help in modifying position descriptions, or in other position management considerations.

190

2

**Reasonable Accommodations Coordinator** - To assist in restructuring jobs, modifying work stations, adjusting work schedules, obtaining specialized equipment and assistive devices. Your EEO Office or servicing Personnel Office is generally responsible for the Reasonable Accommodations Program.

**State Dept. of Rehabilitation Services** - To assist in restructuring jobs, modifying work sites, identification of specialized equipment and assistive devices, and/or referrals to other agencies/offices providing placement assistance.

191

*12*

**ATTACHMENT 5**

## Sample Job Offer Letter

Employee's Name
Employee's Address


Dear          :

We have received medical information from your physician which indicates you can return to work.  In accordance with your medical restrictions, the following position is offered to you:

> Title:
> Permanent/Seasonal/Temporary (Job offer must agree with employee's last appointment):
> Series/Grade/Salary:
> Organization/Location:
> Tour of Duty/Hours of Work:
> Date Job Available:

The following describes the duties and physical/environmental requirements of this position. [CAUTION:  The functional requirements of the offered position must be included in narrative format and must comply with the individual's physical limitations. ( EXAMPLE):  While sitting in a chair, you input data into a remote computer  terminal.  The terminal is at eye level when the operator is in a sitting position, and no reaching or working above shoulder level is required.  You may occasionally be required to  move and carry computer listings short distances.  The weight of the listings does not exceed 10 pounds.  You may be required to walk short distances on an intermittent basis, not to exceed a total of 1 hour per day.  No stair climbing is involved.  You will be working indoors and will not be exposed to cold or dampness.  You will be allowed to sit or stand at your convenience, for comfort, and you will be permitted to take frequent walks.]  A copy of the official position description is attached.

If you decline this position, and OWCP determines that this is a job that you can perform, your benefits under the Federal Employees' Compensation Act will be terminated (except for medical benefits).  If you accept this position, we will provide the necessary information to the OWCP claims examiner for determination of loss of wage earning capacity, if any.  You will receive applicable credit for the time spent on the OWCP compensation rolls for leave and retirement purposes, in accordance with law and regulation.  If you were previously found eligible for OPM Retirement benefits, you may wish to contact the Office of Personnel Management (OPM) Retirement Operations Center, at (724) 794-6628 to determine your current eligibility to elect to transfer benefit coverage from OWCP to OPM Retirement.

Your decision as to acceptance or declination of this offer should be made in writing within 15 days of the date of this letter.  The enclosed Acceptance/Declination Statement is provided for this purpose.  Failure to notify this office of your decision will constitute a rejection of a valid re-employment offer and may serve as a legal basis for OWCP to terminate benefits.

If you have any questions, contact _____ at  (telephone #).

Sincerely,


Enclosures


cc:  WCC Claims Specialist
     OWCP Claims Examiner

*192*

*13*

**ATTACHMENT 6**

**ACCEPTANCE/DECLINATION STATEMENT**

(    ) I, _____, voluntarily ACCEPT the (permanent, seasonal, temporary) position of (Job Title, Series/Grade/Step), at an annual salary of $ _____.  I make this acceptance voluntarily without pressure or coercion.  I understand that if OWCP benefits are currently being received, this voluntary acceptance of the position being offered may result in a reduction or termination of such benefits.  I request this action be taken effective (date) _____.

_____        _____        _____

(Signature)                                         (Date)

(    ) I, _____, DECLINE this offer of placement to the (permanent, seasonal, temporary) position of (Job Title, Series/Grade/Step), at an annual salary of $ _____.  I fully understand the consequences that if I decline the job offer and OWCP determines that this is a job I can perform, that my compensation benefits may be terminated (except for medical benefits) under Section 8106 (c) of 5 United States Code.

Give reason for declination:

_____        _____

(Signature)                                         (Date)

**FAILURE TO RESPOND TO THIS JOB OFFER WILL BE CONSIDERED A DECLINATION**

cc:  WCC Claims Specialist
      OWCP Claims Examiner

*193*

14

ATTACHMENT 7

# Cost Avoidance Information

## CORBIN

**LABTIS, MARILYN S** ━━━━━ · GS   G0526   5

|  |  |  |  |
|---|---|---|---|
| Functional Division: | **40** | | |
| Office: | **41** | **C.A.R.E.** | |
| Claim Number: **132081874** | | Date of Injury: **6/23/2003** | |
| Action: **Permanently Returned to Duty** | | | Potential CA: **Yes** |
| Entry Date: **12/16/2003** | | Effective Date: **1/1/2004** | |
| Salary: **$28,384** | | Compensation Rate: **0.67** | |
| SCD: **10/15/2002** | | DOB: **11/16/1957** | Life Expectancy: **24** |
| COP Hours **0** | | LWOP Hours: **0** | RTD Hours: **40** |

|  |  |
|---|---|
| Medical/Other Cost: | **$0** |
| COP Payment | **$0** |
| Compensation Payment: | **$0** |
| Projected Compensation: | **$453,445** |
| Total Cost Avoidance: | **$453,445** |

194

**KAISER PERMANENTE®**

EXHIBIT 2

LA 5    MARCH 3 3 G    11 57

MR# 2A 6976534

M F Y1 1951    0 6976534

## INDUSTRIAL WORK STATUS FORM

IMPRINT AREA

**1. Diagnosis**
☐ Level of care consistent with First Aid

**2. DATE OF VISIT:** 9·15·03 (Date)    **DATE OF INJURY:** 6·23·03 (Date)
   **Next Appointment (check):** ☐ 1 ☐ 2 ☐ 3 ☐ 4 Weeks ☐ Other: _____

**3. ☐ Patient Can RETURN TO WORK with NO RESTRICTIONS (Full Duty):** _____ (Date)
   ☐ Discharged as cured

**4. ☐ Patient has reached permanent and stationary status and has:**
   ☐ Permanent restrictions ☐ Need for continuing/future treatment

**5. ☐ ESTIMATED Return to Full Duty:** _____ (Date)

**6. ☑ Patient COMPLETELY UNABLE TO WORK, FROM:** 9·15·03 (Date) **UNTIL:** 9·24·03 (Date)
   **REGARDLESS OF AVAILABILITY OF TRANSITIONAL OR OTHER MODIFIED WORK**

**7. ☐ IF EMPLOYER OFFERS MODIFIED WORK AS SPECIFIED BELOW, PATIENT CAN RETURN TO WORK**
   **FROM:** _____ (Date) **UNTIL:** _____ (Date)
   (Please NOTE: If employer cannot accommodate these restrictions, patient must be regarded as <u>unable to work</u> for this period. Employer/Supervisor – If questions, please call Office at phone number below.)

**CAPABILITIES/RESTRICTIONS:**
   Patient Should Be Limited to: _____ Hrs/Day, _____ Hrs/Week

> Occasionally (occas) = up to 25% of shift • Intermittently (inter) = up to 50% of shift • Frequently (freq) = up to 75% of shift
> NOTE: When no box is checked for an ability, unrestricted activity for the entire shift is indicated.

**a. Patient can:**

| | | |
|---|---|---|
| Bend: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| Twist: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| Squat: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| Kneel: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| Climb _____ (stairs, ladders, buildings...): | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| Reach above shoulder: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| Gripping/Grasping: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| Extend Neck: | ☐ Not at all |

**b. Patient can use:**
   ☐ Rt. Hand not at all ☐ Lt. hand not at all
   ☐ Walk only with: ☐ Crutches ☐ Cane ☐ _____

**c. Patient can lift/carry* up to _____ lbs:**

| | |
|---|---|
| 0-10 lbs.: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| 11-25 lbs.: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| 26-40 lbs.: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |
| 41-100 lbs: | ☐ Not at all ☐ Occas ☐ Inter ☐ Freq |

*Force for push/pull should never exceed force for lift/carry.

**d. Patient can:**
   Stand: _____ minutes per hour, _____ total hours
   Walk: _____ minutes per hour, _____ total hours
   Sit: _____ minutes per hour, _____ total hours
   Drive: _____ minutes per hour, _____ total hours
   Perform Repetitive Hand Motions:
   _____ minutes per hour, _____ total hours
   ☐ Keyboarding ☐ Mousing:
   _____ minutes per hour, _____ total hours

**e. OTHER (Capabilities/Restrictions):** _____

☐ Able to lift/carry up to 20 lbs.; needs to be able to change position, alternating sit/stand every 20 minutes.
☐ Able to lift/carry up to 20 lbs. with elbow of affected arm kept adjacent to trunk; no work above shoulder level.

20

**8. ☐ Physical Therapy Required. Frequency:** _____

**THE LIMITATIONS LISTED ARE INTENDED TO FACILITATE TEMPORARY JOB ACCOMMODATION AND SHOULD NOT BE INTERPRETED AS A DESCRIPTION OF IMPAIRMENT FOR PURPOSES OF RATING AS DEFINED BY THE CALIFORNIA CODE OF REGULATIONS**

NAME OF FACILITY: STL    PHONE #: (401) 972-1300 FAX # (413) 972-6502

SIGNATURE _____    PRINT CLINICIAN NAME _____    DATE _____

# EEO COUNSELING REPORT – INDIVIDUAL COMPLAINT
### PART I (Through initial interview)
**Use a continuation sheet if necessary.**

| 1. Director, Treasury Complaints Center, Oakland: | 2. EEO and Diversity Manager Oakland Territory: | 3. EEO Counselor Oakland Territory | 4. Date Counseling First Sought: |
|---|---|---|---|
| Lois Hoffman<br>1301 Clay Street, Suite 1020N<br>Oakland, CA 94612<br>Voice: (510) 637-3100<br>Fax: (510) 637-3199 | Gerald Stringer<br>55 S. Market St, Stop #HQ-0003<br>San Jose, CA 95113<br>Voice: (408) 817-6319<br>Fax: (408) 817- 6316 | Sherrita Jackson<br>55 S. Market St., HQ 0003<br>San Jose, CA 95113<br>Voice: 408-817-6314<br>Fax: 408-817-6316 | September 19, 2003<br><br>5. Date of First Interview:<br><br>September 23, 2003 |

| 6. Employee or Applicant: Name; Business or Home Address Employee; Official Job Title; Series and Grade | | 8. Matter Causing Complaint or Issue - Mark (X) where applicable. | |
|---|---|---|---|

**Office:**
Marilyn Labtis
Tax Specialist GS-596-05
W&I, Cust Ast, Relatshp
55 S. Market Street, Stop #6300
San Jose, CA 95113
Tel (415)297-1708
Fax: (408) 732-2048
E-mail: Marilynslaol.com

**Residence:**
236B East Red Oak Drive
Sunnyvale, CA 94086
Tel: (415) 297-1708

| Matter | | Matter | |
|---|---|---|---|
| Appointment | | Promotion | |
| Assignment of Duties | | Reasonable Accommodation | |
| Awards | | Reassignment | |
| Change to Lower Grade | | Reinstatement | |
| Classification | | Removal / Separation | |
| Convert to Full-time/Part-time | | Reprimand | |
| Duty Hours | | Resignation | |
| Evaluation – Merit Pay | | Retirement | |
| Evaluation – Non Merit Pay | | Suspension | |
| Examination / Test | | **Termination During Probation** | X |
| Harassment (Non-sexual) | | Time and Attendance | |
| Harassment (Sexual) | | Training | |
| Overtime | | Within Grade Increase | |
| Pay | X | **Working Conditions** | X |
| Other Issue (briefly describe) | | | |

**7. Basis (es) Type of Discrimination Mark (X) where applicable**

| | | | | |
|---|---|---|---|---|
| | Race → | | | |
| | Color → | | | |
| | National Origin → | | | |
| | Religion → | | | |
| | Sex: | Male → | | Female → |
| | Age | Date of Birth → | | |
| X | **Disability** | Mental→ | **Physical →** | X |
| | Retaliation/ Reprisal | | | |
| | Other → | Sexual Orientation → | | |
| | | Parental Status → | | |
| | | Protected Genetic Information → | | |

RECEIVED DEC 1 2 2003
TREASURY COMPLAINT CENTER

**9. An EEO Counselor cannot reveal the identity of a person who has come for counseling except when authorized to do so by the person counseled. Mark (X) where applicable.**

| Is Complainant willing to have his/her name revealed during the counseling stage? | YES → | X | NO → |
|---|---|---|---|

If answer is "Yes", Complainant must give permission by signing name here ™ X _Marilyn Labtis_

| 10. Organization Where Alleged Discrimination Occurred and Date of Occurrence. | 11. Give date Complainant became aware of alleged discrimination if substantially different from that shown in #10. Explain. |
|---|---|
| Internal Revenue Service, W&I, Cust, Ast, Relatnshp & ED (Care) SPEC  Date: 09/17/03. | N/A |

| 12. If complaint appears to be untimely, what explanation is offered to explain why EEO Counselor was not contacted within 45 days? |
|---|
| N/A |

TD F 62-03.1 (03/87) PREVIOUS EDITION TD F 67.13.1 (06/85) OBSOLETE.



# EEO COUNSELING REPORT – INDIVIDUAL COMPLAINT
## PART I (Through initial interview)
### Use a continuation sheet if necessary.

**Provide a brief description of complaint, summarizing actions which caused counseling to be sought and which Complainant believes are discriminatory.**

Complainant alleges discrimination based on Disability when on 9/17/03, she received a Termination of Employment letter in the mail dated 9/12/03 from the Area Director, W&I, Irene Scandiffio.  Complainant was terminated effective 9/19/03, while serving as a probationer on a Career Conditional Appointment.  She was counseled for unsatisfactory job performance by her manager, Stella Lee on 6/13/03; and according to her manager, as of 9/12/03, no improvement in performance was noted.  Complainant alleges that she initially, suffered a lower back injury during the week of 6/3/03, while lifting laptop computers onto a cart.  Subsequently, she suffered a 2nd injury on 6/23/03, which was aggravated by the 1st injury, while lifting her lap top computer along with other files onto her workstation.  On 6/23/03, the Complainant filed for Workers Compensation Benefits and was approved from 8/08/03 to 9/19/03.  Complainant alleges that she has been unable to work since 6/23/03 and therefore, was not given a chance to demonstrate improvement in work performance.  Complainant also states that she disagrees with the unsuccessful rating she was given and believes her manager is retaliating against her because she asked her manager not to yell at her, as witnessed and overheard by a co-worker.

**Remedial relief desired by Complainant:**

1. Complainant is requesting to be reinstated as a tax specialist with retroactive pay from the date of termination 9/19/03.
2. An extension of her probationary period to the amount of time she has been out sick, due the occupational injury she suffered, in order to demonstrate an improvement in job performance.
3. Requests diplomacy, fairness without retaliation, support and to be accepted as a capable permanent Federal employee.

**Is the Complaint raised in the complaint raised in another procedure?  Mark (X) where applicable.**

| | YES → | NO → | |
|---|---|---|---|
| On the same matter has Complainant filed a grievance under a negotiated grievance procedure? | | NO → | X |
| On the same matter has Complainant filed a grievance under the Agency grievance system? | | NO → | X |
| Has Complainant appealed to the Merit Systems Protection Board? | | NO → | X |
| If a grievance or appeal has been filed, what is its status? | | | |

| Does Complainant elect to have a representative? Mark (X) | | | Signature of EEO Counselor and date signed: |
|---|---|---|---|
| YES → | X | NO → | _Shirnita Jackson_ 12/23/03 |

TD F 62-03.1 (03/87)  PREVIOUS EDITION TD F 67.13.1 (06/85) OBSOLETE.

I:\WELCOME TO EEO\EEO COUNSELOR STUFF\MLabtis\ROC Part1 MLabtis 1.doc   Last printed 09/26/2003 4:25 PM
Page 2 of 2

Exhibit

## EDD Employment Development Department
### State of California

## Claim for Disability Insurance Benefits – Doctor's Certificate

*See attached Doctor's Certificate.*

**TYPE or PRINT with BLACK INK**

| 34. PATIENT'S FILE NUMBER | 35. PATIENT'S SOCIAL SECURITY NO. | 36. PATIENT'S LAST NAME |
|---|---|---|
| | 555 - 59 - 70 | LABT16 |

| 37. DOCTOR'S NAME AS SHOWN ON LICENSE | 38. DOCTOR'S TELEPHONE NUMBER | 39. DOCTOR'S STATE LICENSE NO. |
|---|---|---|
| FREDERICK NICOMEDEZ | (632) 771-9294 | 81612 |

**40. DOCTOR'S ADDRESS** – NUMBER AND STREET, CITY, STATE, COUNTRY (IF NOT USA), ZIP CODE. POST OFFICE BOX NUMBER IS NOT ACCEPTED AS THE SOLE ADDRESS

MOB 511 ASIAN HOSPITAL AND MEDICAL CENTER ALABANG PHILIPPINES

**41. THIS PATIENT HAS BEEN UNDER MY CARE AND TREATMENT FOR THIS MEDICAL PROBLEM**

FROM 12,18, 2004 TO present, AT INTERVALS OF ☐ DAILY ☐ WEEKLY ☐ MONTHLY ☐ AS NEEDED

**42. AT ANY TIME DURING YOUR ATTENDANCE FOR THIS MEDICAL PROBLEM, HAS THE PATIENT BEEN INCAPABLE OF PERFORMING HIS/HER REGULAR OR CUSTOMARY WORK?**
☐ NO – SKIP TO THE DOCTOR'S CERTIFICATION SECTION
☑ YES – ENTER DATE DISABILITY BEGAN: 12,18,04

**43. DATE YOU RELEASED OR ANTICIPATE RELEASING PATIENT TO RETURN TO HIS/HER REGULAR / CUSTOMARY WORK** ("UNKNOWN," "INDEFINITE," ETC., NOT ACCEPTED.) 1 / 1 / 05

**44. ICD9 DISEASE CODE, PRIMARY** (REQUIRED UNLESS DIAGNOSIS NOT YET OBTAINED)

**45. ICD9 DISEASE CODE(S), SECONDARY**

**46. DIAGNOSIS** (REQUIRED) – IF NO DIAGNOSIS HAS BEEN DETERMINED, ENTER OBJECTIVE FINDINGS OR A DETAILED STATEMENT OF SYMPTOMS

CHRONIC LOW BACK PAIN 2° TO DISC HERNIATION L5 S1

**47. FINDINGS** – STATE NATURE, SEVERITY, AND EXTENT OF THE INCAPACITATING DISEASE OR INJURY. INCLUDE ANY OTHER DISABLING CONDITIONS

(+) pain over back in ROM , (+) SLR
(-) neurovascular deficits

**48. TYPE OF TREATMENT / MEDICATION RENDERED TO PATIENT**

NSAIDS AND REHAB THERAPY

**49. IF PATIENT WAS HOSPITALIZED, PROVIDE DATES OF ENTRY AND DISCHARGE** no ___/___/___ TO ___/___/___

ICD9 PROCEDURE CODE(S)

**50. DATE AND TYPE OF SURGERY / PROCEDURE PERFORMED OR TO BE PERFORMED**
___/___/___ N.A.

**51. IF PATIENT IS NOW PREGNANT OR HAS BEEN PREGNANT, WHAT DATE DID PREGNANCY TERMINATE OR WHAT DATE DO YOU EXPECT DELIVERY?**
___/___/___ NA.

**52. IF PREGNANCY IS / WAS ABNORMAL, STATE THE ABNORMAL AND INVOLUNTARY COMPLICATION CAUSING MATERNAL DISABILITY**

**53. BASED ON YOUR EXAMINATION OF PATIENT, IS THIS DISABILITY THE RESULT OF "OCCUPATION," EITHER AS AN "INDUSTRIAL ACCIDENT" OR AS AN "OCCUPATIONAL DISEASE"?** (INCLUDE SITUATIONS WHERE PATIENT'S OCCUPATION HAS AGGRAVATED PRE-EXISTING CONDITIONS.)
☑ YES ☐ NO

**54. ARE YOU COMPLETING THIS FORM FOR THE SOLE PURPOSE OF REFERRAL / RECOMMENDATION TO AN ALCOHOLIC RECOVERY HOME OR DRUG-FREE RESIDENTIAL FACILITY AS INDICATED BY THE PATIENT IN QUESTION 21?**
☐ YES ☑ NO

**55. WOULD DISCLOSURE OF THIS INFORMATION TO YOUR PATIENT BE MEDICALLY OR PSYCHOLOGICALLY DETRIMENTAL?**
☐ YES ☑ NO

**Doctor's Certification and Signature (REQUIRED):** Having considered the patient's regular or customary work, I certify under penalty of perjury that, based on my examination, this Doctor's Certificate truly describes the patient's disability (if any) and the estimated duration thereof.

I further certify that I am a _____ licensed to practice in the State of _____
(TYPE OF DOCTOR) (SPECIALTY, IF ANY)

[signature] $-12-05
ORIGINAL SIGNATURE OF ATTENDING DOCTOR – RUBBER S... DATE SIGNED

Under sections 2116 and 2122 of the California Unempl... certifies the medical condition of any person in order to ... by imprisonment and/or a fine not exceeding $20,000. ... ...lation for any individual who, with intent to defraud, falsely ...is whether for the maker or for any other person, and is punishable ...administrative penalties.

page 3

DE 2501 Rev. 73 (3-03)

*EXHIBITS to Initial Complaint filed 6/25/07*

*1 of 7*

**Labtis Marilyn S**

| | |
|---|---|
| **From:** | *SPEC Direct |
| **Sent:** | Thursday, May 29, 2003 7:30 AM |
| **To:** | Labtis Marilyn S |
| **Subject:** | "Thank You" from SPEC Direct! |

Marilyn,

Thank you for your feedback on your Power Point presentation needs. We really appreciate you taking the time to send us your comments to help us develop products for SPEC. We will forward your input to Education &Product Development and the Communications and Marketing staffs.

We hope you will continue to use "SPEC Direct" to provide feedback to help develop and fulfill the SPEC mission. This feedback mechanism affords us the opportunity to get input from all SPEC employees before decisions and issues are final.

Thank you for caring enough to take the time to provide us this valuable input.

*Communications and Marketing Office*
Stakeholder Partnerships, Education and Communication
Wage and Investment Division, Internal Revenue Service
Phone/VMS: 404-338-7897
FAX: 404-338-9036
<mailto:specdirect@irs.gov>

-----Original Message-----

| | |
|---|---|
| **From:** | Labtis Marilyn S |
| **Sent:** | Wednesday, May 28, 2003 6:03 PM |
| **To:** | *SPEC Direct |
| **Cc:** | Lee Stella |
| **Subject:** | PowerPoint Presentations |

**Suggested Topics for Power Point Presentations  are as follows:**

**0  Establishing Partnerships with Financial Institutions as a target market  reflecting asset building goals, features and benefits - Prior to Filing Season.**

**0  Target Partners to support Bilingual Group.This covers market segments  that includes:**

  **a) High School**
  **b) Colleges and Universities**
  **c) Vocational Schools**

   **It can also be a presentation for each specific group. Highlights should be provided on current changes in the Tax Laws and commonly asked questions. Timeframe would be prior to filing season to encourage volunteers for VITA and assist foreign students with complex tax issues.**

**0  Job Loss -The presentation should be useful for large employers including Credit Unions particularly in the Silicon Valley area. Employees and HR group will get assistance as far as tax related issues i.e. 401 K, pensions, investment rollovers, retirement benefits, IRA etc. Large employers  could be an excellent partner in any coalition - Before and after Filing Season.**

**0  Non-Profit Group including Professional Associations - To neutralize competitive issues in marketing. This group should be encouraged to see the benefits of partnership building and**

000063

coalition to work together to promote E-file - Before and after Filing Season.

0 Establishing Partnerships with Hospitals, Government agencies, Senior Centers, Retiremen Community to reach out to Seniors  and  Disabled Group - Annually.

In view of the need to do market segmentation and deliver a clear message to each specific group on current tax issues and benefits, it would be useful to address the concerns of each segment with emphasis on WIIFM.

Marilyn S Labtis
Tax Specialist
Wage & Investment, Area 7, San Jose Territory
Stakeholder, Partnerships, Education & Communication (SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124

000064

## Labtis Marilyn S

| | |
|---|---|
| **To:** | Seibel Louise J |
| **Cc:** | Lee Stella |
| **Subject:** | Blweekly Report |

Hi Louise, thanks very much for the commendation and encouragement.

I'd be glad to help with both scheduled presentations. The one for Calworks is in my neighborhood,so, I can cover that. I need to know the scheduled time and location.

Let's meet on Tuesday or Wednesday morning to finalize the details.

```
Marilyn S Labtis
Tax Specialist
Wage & Investment
Stakeholder, Partnerships,Education & Communication(SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124
```

1

000061

**Labtis Marilyn S**

**To:**
**Subject:**                    Laura Obergfell
                               RE: Stanford University questions followup

Hello Laura,

Thanks very much for allowing us to present to your Postdoctoral Scholars at Stanford University. Special thanks for the cookies and a good attendance to the Tax Seminar. I was concerned that very few will show up with the three of us being there.

I did follow up with Louise today, and she said that she will forward the Q & A your way.

Best regards,


MARILYN
Marilyn S Labtis
Tax Specialist
Wage & Investment
Stakeholder, Partnerships, Education & Communication (SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124


-----Original Message-----
From: Laura Obergfell [mailto:lto@stanford.edu]
Sent: Monday, March 17, 2003 10:50 AM
To: louise.j.seibel@irs.gov; marilyn.s.labtis@irs.gov
Subject: Stanford University questions followup

Dear Louise and Marilyn,

Thank you again for coming to Stanford University to speak to our postdoctoral scholars. I wanted to follow up - were there some common questions asked that should be posted on our web site with the responses?

I was expecting some Q & A from you and haven't seen anything. I have a postdoctoral scholar asking if we have a site set up.

Thank you,
Laura Obergfell
Postdoctoral Services

1

21

**Labtis Marilyn S**

| | |
|---|---|
| **To:** | Laura Obergfell |
| **Cc:** | Seibel Louise J; Martinez Jackie M |
| **Subject:** | RE: Stanford tax seminar |

Hello Laura:

Thank you for your update.

There will be two Senior Tax Specialists and myself to give the presentation. Louise Seibel and Josie Martinez from San Jose office.

We wanted to see if it's possible to have a rostrum that we can use for the presentation materials.

Would you happen to know approximately how many students are expected to attend?

Marilyn S Labtis
Tax Specialist
Wage & Investment
Stakeholder, Partnerships,Education & Communication(SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124

-----Original Message-----
From: Laura Obergfell [mailto:lto@stanford.edu]
Sent: Thursday, February 13, 2003 3:10 PM
To: marilyn.s.labtis@irs.gov
Subject: Stanford tax seminar

Dear Marilyn,

I wanted to provide you with a copy of our notice to the postdoctoral scholars about your visit on February 24th. Michael is on medical leave and I am unclear as to whether both of you are visiting (I believe you are) or just Louise is coming.

I will have a copy of the front pages of the 1040 and 1040-NR forms as a handout. Are you planning on bringing materials? I will have a table near the classroom for cookies and can provide space for handouts.

I am sending this on Friday, please let me know if I should make any changes for the program:
--------------------------------------------------------------------------------
---------------------------------------------------

To our postdoctoral scholars:

Two tax seminars have been set for February 24, Monday. We have a senior tax specialist from the Internal Revenue Service coming to answer questions.

The first seminar is for U.S. citizens, permanent residents, and foreign nationals who file the 1040 form (resident aliens). It is from 3:30 - 4:30 pm in room M-112.

The second seminar is for foreign nationals (non-resident aliens) who file the 1040-NR and is from 4:30 - 6:00 pm in room M-112.

Room M-112 is a classroom at the School of Medicine in the main building, at the corner of Roth Way and Campus Drive. The entrance to the classroom

1

6 97

## Labtis Marilyn S

**From:**    Labtis Marilyn S
**Sent:**    Monday, March 24, 2003 4:00 PM
**To:**    Seibel Louise J
**Cc:**    Lee Stella; Martinez Josie G
**Subject:** FW: Workshop on Monday, April 7

FYI ,

Per your request, this is another Tax Worshop scheduled for Foreign students at San Jose State University.

It looks like this will be an ongoing project for International students after Stanford University.

Perhaps, we can include this in our agenda for the meeting tomorrow.

Thanks,

Marilyn S Labtis
Tax Specialist
Wage & Investment
Stakeholder, Partnerships,Education & Communication(SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124

-----Original Message-----
**From:** khimlok@sjsu.edu [mailto:khimlok@sjsu.edu]
**Sent:** Monday, March 24, 2003 11:50 AM
**To:** steve.sims@stb.ca.gov; marilyn.s.labtis@irs.gov
**Subject:** Workshop on Monday, April 7

Mr. Steve Sims, Speaker Bureau
Ms. Louise Seibel c/o Ms. Marilyn Labtis

Thank you very much for your willingness to come to San Jose State University to present income tax information for our international students.

Here are the details of the workshop:
Monday, April 7, 2003 from 3:00 p.m. to 5:00 p.m. in the Boccardo Business Classroom (BBC) building, Room 102.
Agenda:

- Introduction
- Overview of State of California filing
- Overview of Federal filing
- Questions and Answer session

I expect to have approximately 125 students present for this workshop. These students are international students on F-1 or J-1 student status and are consider non-residents. If you are able to bring forms and instruction booklets it would be greatly appreciated.

22

3/24/03

Can you please provide me with your mailing address so that I can send you a campus map with directions as well as a parking permit.  Please let me know by Tuesday, April 1 if you have not receive it. If you should have any questions, please feel free to contact me by telephone at 408-924-5922 or by email at khimlok@sjsu.edu.

Again, thank you very much for your participation and I look forward to meeting you on Monday, April 7th.

_____
Khim T. Lok
Office Manager
International Programs and Services (IPS)
San Jose State University
Tel:  408/924-5922
Fax: 408/924-5976
khimlok@sjsu.edu

EXHIBIT to Initial Complaint filed 6/25/07

| **A F F I D A V I T** | State of: California | County of: Santa Clara |

1   **Please state your name, former duty title, duty location, age (to include date of**
2   **birth), sex, race, and national origin.**
3
4   I, Marilyn S. Labtis, was formerly a Tax Specialist, GS-596-05, assigned to Stakeholder
5   Partnership, Education and Communication (SPEC) Area 7 – San Diego, SPEC Field
6   Operations, Customer Assistance – Relationship & Education (CARE), Wage &
7   Investment, Internal Revenue Service at San Jose, California. I am a 46 years of age
8   (DOB: 11/16/1957) female, American Citizen, predominantly Filipino, part Eurasian
9   heritage and am originally from the Republic of the Philippines.
10
11  **Please describe the nature of your disability to include an explanation as to**
12  **whether the disability was documented in your personnel file and an explanation**
13  **as to how the disability limits any major life activities (e.g. caring for yourself,**
14  **performing manual tasks, walking, seeing, hearing, speaking, breathing, learning,**
15  **working, etc.).**
16
17  On or about February 2003, I disclosed disabling limitation to Stella Lee as a result of
18  an industrial injury (prior to my assuming duties with IRS). The injury precluded lifting
19  and I advised Stella of medical certification that had been submitted to an attorney who
20  was handling the case, I also gave my consent to voluntarily provide the name of the
21  attorney for follow up and documentation. Disclosure was done more than once.
22
23  I subsequently suffered a further injury (with IRS) consisting of low-back strain which
24  was documented with certification from Dr Satish S. Sharma, Treating Doctor, Kaiser
25  Occupational Medicine, June 23, 2003. This injury limited major life activities to include
26  caring for myself with lifting for basic necessities in life, prolonged driving or sitting,
27  performing manual tasks, impaired capacity in prolonged sitting, standing, walking,
28  kneeling and sometimes sleeping is limited with the reoccurrence of pain including
29  sciatic nerve discomfort with my right leg.

Page 1 of 19 Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

30

31  Timely disclosure of all information pertaining to my disabling condition with a need for

32  accommodation was made on prescribed restrictions to my assigned territory Manager,

33  Stella Lee, which included low-back strain, restrictions on heavy lifting as a result of

34  recent industrial injury & prior industrial injury. I also gave her my consent to release the

35  name of the attorney who accepted all documentation and information on my case for

36  verification with prior injury. To the best of my knowledge, she would have done what

37  was needed to protect my worker's rights as a new employee of the Federal government

38  since I have never made any industrial report to any other government agency.

39

40  **Please list all of the responsible management officials who are involved in your**

41  **complaint.**

42

43  Stella Lee, my 1st level manager and Irene Scandiffio (the Area Manager) were the

44  responsible management officials.

45

46  **If you have not done so already, please explain when and how (if applicable) your**

47  **management became aware of your disability status.**

48

49  As noted above, disclosure was made beginning of 2003 when heavy lifting started and

50  June 23, 2003 for low-back strain injury. Periodic reports were submitted to the Agency

51  in a timely manner with the last report on 8/23/03 indicating required accommodation on

52  disabling condition along with status report on Medical care, however, retaliation

53  occurred with the termination of appointment on 9/192003 after reports have been made

54  on EEO activity and on required disability accommodation. I requested for

55  accommodation and expressed my determination to continue to work and cooperate with

56  the group on what was needed. However, I was denied my equal opportunity to keep a

57  job with the IRS and my worker's rights for accommodation was denied based on

58  disclosed available documentation to my territory manager.

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

59

60  **Please address when you initially became involved in the EEO complaint process**
61  **to include an explanation as to how and when the cited management official(s)**
62  **became aware of your involvement in the EEO process.**

63

64  On or about March 2003, when Ms Lee denied my rights to be accommodated for my
65  disabling limitation in lifting. At that time, I sought assistance due to mounting hostility in
66  working conditions originating basically on denied accommodation on my disabling
67  condition with restricted lifting.  This condition was certified by a Doctor and disclosed to
68  Ms Lee who asked me personal questions including my age and told me directly that I
69  cannot have a job with the IRS after disclosures in disability and needed accommodation
70  in lifting.

71

72  I further explained that when I accepted the job there was no indication of any heavy
73  lifting required for the job. Ms. Lee never made any attempt at all to provide any
74  alternate consideration. Shortly thereafter, I noticed immediate retaliation in verbal
75  hostility with interactions  towards me, disparity in treatment ( witnessed and commented
76  by Carlos Camino-co-worker and members of management team on or about May and
77  June of 2003), and Ms Lee issued unfavorable review thereafter.

78

79  These violations of my worker's rights were reported to Gerald Stringer, EEO Manager.
80  on or about April 2003.  Mr. Stringer suggested that I provide him with written
81  documents on my resulting performance review.  A copy of my e-mail to Gerald Stringer,
82  EEO Manager was also sent to Ms. Lee, Territory Manager after the EEO Manager had
83  advised me to report to him should there be any continuance in disparity of treatment. In
84  summary, I would say that EEO management and Stella Lee were aware of how I was
85  treated differently, i.e. discrimination based on my disabling condition; my exposure to a
86  hostile work environment (which was done prior to my receiving the performance
87  review); and resultant issuance of the unsuccessful rating in retaliation for my prior EEO

Page 3 of 19 Pages
Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

88    activity.

89

90    On 9/19/2003 my appointment was terminated without any prior employment feedback
91    or opportunity to remedy any alleged performance deficiency.

92
93
94    *Claim 1*

95    *Whether the Complainant was discriminated against on the bases of physical*
96    *disability (lower back strain and impaired sciatic nerve in right let, injury to chest,*
97    *neck and shoulders), race (Filipino), national origin (Philippines), age 46 (DOB:*
98    *November 16, 1957) sex (female) and/or reprisal when on June 13, 2003, she*
99    *received an unsuccessful rating of her performance during her probationary period?*

100
101
102    **Please describe in chronological order all the events you believe are related to**
103    **your having received the unacceptable progress review during your probationary**
104    **period. This should include an explanation as to whether you had any indication**
105    **that the progress review might be unacceptable and whether you received any**
106    **other performance feedback during the rating period.  If so, please identify the**
107    **feedback you received; from whom; and when.**

108

109    On or about February 2003 – I disclosed disabling limitation in lifting including availability
110    of medical certification submitted to an attorney handling the case.  I also gave my
111    consent to voluntarily provide the name of the attorney for follow up and documentation.
112    Disclosure was done more than once.

113

114    On or about February through March 2003 – I noticed disparity on treatment arising from
115    disabling condition, pervasive enough as creating hostile work environment, being
116    excluded from meetings where significant work information were released, and being
117    segregated by race and national origin as far as doing education outreach which had
118    impact on my performance report. Please note, there was no business disclosure
119    requiring segregation by race in outreach projects nor heavy lifting required for the job

Page 4 of 19 Pages

Form 5991 (Rev.6-81)

*neue*

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |

120    prior to my acceptance of the job.

121

122    On or about February 2003 – Quid pro quo sexual harassment - Unwanted solicitations
123    to be alone with Mr Albert Yee, pervasive enough as having caused intimidating work
124    environment, unwelcome job related comments, advances to be alone with Mr Yee and
125    work distraction witnessed by Ms. Lee when she had to wait most of the time to see me
126    at my desk while Mr Yee was there frequently at the same time.

127

128    I say that my performance review was affected by it because of discussions I had with
129    Mr. Yee, after repelling his advances,  where he implied I may not be able to achieve a
130    permanent status and keep my job.  I directly told him since December 2002 while
131    having lunch that his advances made me uncomfortable, as he was a married man and I
132    was not at the workplace to have an affair but to do my job.

133

134    As an example of my concern about the performance review, there was a situation
135    where Mr. Yee and I had a conversation about my wearing gloves to protect myself due
136    to the frequency of paper cuts that I was experiencing. Mr. Yee was very supportive and
137    made specific recommendations as to what gloves I should use.  Imagine my shock and
138    consternation when during my performance review, Ms. Lee brought up my wearing of
139    gloves as a negative action.  I can only believe that Mr. Yee was in fact intruding on
140    performance related issues relative to myself.

141

142    To the best of my knowledge, Ms. Lee could only gain knowledge of my wearing gloves
143    as a result of my having spoken with Mr. Yee on the subject.  I had the feeling that they
144    were "ganging up" on me based on my having repulsed Mr. Yee's advances. Such
145    negative comments (about my wearing of the gloves) had no impact on the efficiency
146    and competency with which I carried out my job.

147

148    On or about March 2003 – Request for accommodation on heavy lifting was brought up

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
| --- | --- | --- |

149  again due to difficulty with hostility as work was affected.
150

151  On or about March to April – Requested Ms Lee's assistance on mounting hostility,
152  verbal harassment and difficulty with disabling heavy lifting. All these requests were
153  ignored with no follow-up or remedial action. Instead insult was added to injury and I was
154  told to look for another job without any remedial action on her part as a manager to
155  protect my rights or alternative solution as a rational manager.
156

157  On or about April 2003 – I reported the abovementioned issues to the EEO Manager,
158  Gerald Stringer. He tried to console me by him saying that I was not alone. And that
159  there will always be an EEO situation wherever you work. That it was the reason why
160  EEO Department existed within the government system.
161

162  Another former Manager, James Kinsey, formerly of the same department, previous
163  Manager before Ms Lee and Carlos Zepeda who hired me, also indicated that I was
164  unjustly treated with the assignment of the E-file project because I had never been given
165  a complete formal training and I was also new to the IRS. This was also one of the main
166  issues I brought to the attention of EEO Manager where I demonstrated to him that I
167  was a victim of disparity in  treatment. Mr Kinsey added that there is more politics
168  working for the government than in a private sector. James Kinsey used to be part of the
169  management team for the same IRS SPEC in San Jose.
170

171  Week of June 3, 2003 – I was assisting Tina Armendariz with the VITA computers when
172  I had a lifting accident that caused initial trauma of pain. One of the other employees
173  directed me to the first aid kit where I took some pain pills.  Tina made an observation at
174  the time regarding my appearance of pain.
175

176  June 23, 2003 – I received a lower back injury when I lifted my IRS lap top computer
177  along with two work files. Medical documentation was released thereafter including

Page 6 of 19 Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| A F F I D A V I T | State of: California | County of: Santa Clara |
|---|---|---|

178   accommodation required. All reporting and disclosures were completed in a timely
179   manner.
180

181   On August 2003, medical report from Kaiser's Dr Sharma authorized me to go back to
182   work with medical follow-up and accommodation required.
183   September 2003 – Follow up reports from medical doctors allowing me to work with
184   required accommodation. .
185

186   September 19, 2003- Employment was terminated without interactive communication as
187   far as getting me back to work after recovery with required accommodation for resulting
188   disability condition, as documented by US department of Labor Medical form submitted
189   by treating doctor from Kaiser Hospital in Santa Theresa.
190

191   After disclosing needed accommodation for disabling condition as noted above, verbal
192   hostility and hostile interactions towards me increased to include unsuccessful
193   performance rating and final termination of appointment on 09/19/2003 thereafter.
194

195   Please note that there were no verbal or written performance feedback specifically
196   outlining what was lacking and what Ms. Lee could do as a Manager to assist me cope
197   with whatever performance deficiency that was observed. After I sought assistance from
198   her with even just basic remedy on hostile working conditions, Ms Lee denied any
199   assistance. The only verbal feedback she provided was on data entry on E-file where
200   she instructed me to get assistance from another department on a project  outside of the
201   Department  and Division I was hired for, SPEC, mentioned at the beginning of this
202   affidavit.
203

204   **If you have not done so already, please explain why you believe the negative**
205   **review was based on your physical disability, race, national origin, age, sex,**
206   **and/or reprisal for your prior EEO activity.**

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

207

208 I disclosed my disability and requested reasonable accommodation.  Instead of affording
209 me the benefit of a reasonable accommodation for my disability, Ms Lee and her
210 management leadership, treated me differently using my race, national origin and age as
211 a setback for a successful performance and needed accommodation for my disabling
212 condition restricting heavy lifting.  She inferred that I could not be accommodated to
213 work for the IRS based on my handicapped condition as disclosed. Further, she treated
214 me with hostility and verbal abuse witnessed by other co-workers like Ruth Boring who
215 directed me to the Union President, David Dean.

216

217 After I disclosed further concerns on unwanted harassing incidents in the office, Ms. Lee
218 did nothing to investigate my claims and to take appropriate remedial action to protect
219 my rights as an employee.

220

221 After all these violations of my worker's rights, Ms. Lee retaliated with an unsuccessful
222 performance review and she engineered issues, using her authority towards the end
223 result  in wrongful termination of my appointment thereafter released by  Area Director,
224 Irene Scandiffio.

225

226 **Please provide the specific reason(s) why you believe this review should be**
227 **different (e.g. overall rating, narrative, or particular job element rating) to include**
228 **an explanation as to how you believe your performance exceeds the rating you**
229 **were rendered.**

230

231 Overall rating should have been successful at the very least.  On overall business
232 results, I exceeded the expectations from a Tax Specialist. I went beyond the goal of
233 doing educational outreach to contribute in establishing partners and doing
234 presentations which is only expected at a grade 9 or 11 while doing daily tasks of
235 maintenance and group projects. I effectively utilized my time to expanding outreach

Page 8 of 19 Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

236  partners in networking, to fully executing security compliance as directed, and to
237  completing projects timely within reasonable limits. My overall performance actually
238  exceeded the critical elements of the job.
239
240  **Please identify any similarly situated employees (to include their disability status,**
241  **approximate age, race, national origin, sex and whether or not they have been**
242  **involved in the EEO process) whom you believe have been treated differently as**
243  **to the reviews they received from Ms. Stella Lee.**
244
245  Other tax specialists in the department from another race and national origin were
246  treated well by Ms Lee. I was treated with disparity compared to Chinese or other
247  national origin.
248
249  By age, younger workers were relieved of manual tasks most of the time. For example,
250  Ruth Boring who is also older and myself were expected to always have to perform
251  manual tasks and repetitive physical activity. As what Ruth has said once, " the only
252  manual tasks we have not done was to scrub the floor and we were ready to do just that
253  just to keep them happy."
254
255  **Please provide specifics on your claim that Ms. Lee always created pre-textual**
256  **performance problems regarding your work. This should include an explanation**
257  **as to whether other employees were treated differently.**
258
259  Requesting for accommodation on disabling condition was not just denied but it was
260  used to rate me as being uncooperative resulting in overall unsuccessful rating on
261  business interactions. Other employees were rated well even with issues that I have
262  brought up to Ms Lee's attention on hostility and disparity of treatment. All projects on
263  VITA were completed in a timely manner in accordance to required instructions.
264  However, pre-textual results of not completing the project is presented in the form of

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

265    repeated lies and abuse of authority under Ms Lee's leadership.

266

267    **If you have not done so already, please address whether or not you brought**

268    **these issues to the attention of any other management and/or EEO officials.  If so,**

269    **when and what action (if any) was taken.  Please elaborate.**

270

271    Initial verbal discussion with EEO Manager, Gerald Stringer on or about April 2003

272    which included negative comments about Data Entry Project on E-file,  verbal hostility

273    and hostile interactions with me.

274

275    For example, Ms Lee was shouting at me with hostility not just once. I asked her the first

276    time not to do so and I asked for her consideration that I was able to hear her and that

277    she didn't need to yell at me. It was embarrassing with other co-workers being able to

278    hear the hostility. However, she went on and did it again. I explained how Josefa

279    Martinez was rather hostile and indifferent in her dealings with me. Ms Lee tolerated the

280    issues and she added insults to injury.

281

282    The bottom line is that management did not engage in any investigative process and

283    therefore, took no appropriate remedial action.

284
285
286
287

                            *Claim 2*

288    *Whether the Complainant was discriminated against on the bases of physical*

289    *disability (lower back strain and impaired sciatic nerve in right let, injury to chest,*

290    *neck and shoulders), race (Filipino), national origin (Philippines), age 46 (DOB:*

291    *November 16, 1957) sex (female) and/or reprisal when beginning in February*

292    *2003, she was subjected to a work environment made hostile by verbal and*

293    *sexual harassment?*

294

295    **Please provide your recollection of the instances where you were subjected to**

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

296    **sexual harassment by your co-workers. This should include specifics on the**
297    **parties involved, what happened and your response.**
298

299    When I was invited out by Mr.Yee, I told him directly that I did not feel comfortable in
300    going out with married men. My actions demonstrated keeping distance from him where
301    he demonstrated once that he was annoyed with me sitting at a distance from him. We
302    happened to see Mr Hallenbeck (Tech Manager) in the same restaurant where we went
303    for lunch. "He said, I don't bite, so you don't have to sit so far away from me. If I
304    demonstrated to you by actions and by words on my resistance to be out alone with a
305    married man and part of previous conversations involved my chances of keeping my job
306    under Ms Lee who is a close associate of Mr Yee, to the best of my knowledge and
307    understanding, this becomes a troubling issue under potential sexually harassing
308    problems in the work place. It is disturbing to me to be asked out and be reminded of the
309    possibility of not being able to keep my job.

310    I discussed harassing issues (to include incidents of "hang-up phone calls" with Ms Lee
311    and I specifically noted further questions and concerns in the annual audix audit review.
312    But no further follow-up was made. Ms Lee noticed the distractions occurring at my work
313    station (Mr. Yee's visits) but she provided nothing to alleviate the matter.

314    Mr Yee's close affiliation with my boss (sharing work related information i.e. using hand
315    gloves at work, performance issues, unwelcome invitations) was pervasive enough to
316    have the effect of having unreasonably interfered with my work performance and had
317    created an intimidating, hostile and offensive working environment. Though it was done
318    in a subtle way, the attempt in itself violated me as a female worker subjected to undue
319    stress and distraction at work.

320

321    **If you have not done so already, please address whether or not you surfaced your**
322    **concerns to any management, Labor and/or EEO officials. To whom? When?**

Page 11 of 19 Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

323    **What actions (if any) were taken?**

324

325    Please refer to abovementioned answers.

326

327    **Please provide the specifics on your claims that you endured verbal harassment**

328    **starting in February 2003.  This should include the identification of the**

329    **individual(s) whom you believe harassed you and an explanation as to why you**

330    **believe the harassment was based on your protected categories.  Please**

331    **elaborate.**

332

333    On or about February 10, 2003, Ms. Lee informed me that since I had Filipino heritage, I

334    could only be successful in "nothing else" but to function in a Filipino community as far

335    as building coalitions or promoting an educational outreach project.  I was insulted by

336    what I felt was Ms. Lee's condescending tone and her use of a racial disparity.

337

338    On or about April 8, 2003, I told Ms. Lee about the unfairness of getting unjustly accused

339    of having dropped In-Focus machine for Power Point.  Instead of coming up with

340    remedial action, Ms. Lee spoke to me in a derogatory manner and made things more

341    difficult.  Ms. Lee even brought other issues on heavy lifting assignments up to 25 lbs of

342    marketing boxes.  Ms. Lee questioned me relative to my age and ended the

343    conversation by stating that I should look for another job.

344

345    Ruth Boring and Carlos Camino both witnessed verbally harassing encounter with Ms

346    Lee whereby Ruth suggested for me to report to the Union President. Carlos specifically

347    told me that he noticed hostility in treatment towards me. Hostility from Ms Lee

348    apparently influenced other employees like Josefa.  It became apparent that my having

349    disclosed the need for me to be accommodate on my disabling condition, i.e. not being

Form 5991 (Rev.6-81)                                                      Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

350   able to lift heavy loads like 20-25 lbs created hostility in my working conditions,

351

352   **Please identify the similarly situated employees (same grade, career status, etc.)**
353   **who you believed were treated differently by the cited management officials to**
354   **include your knowledge of specific situation where this treatment was evident.**

355

356   Ricca Kunihiro (Filipino by race and national origin) who was hired about the same time
357   as I was and another Tax Specialist, Wendy Leung (Chinese by race and national origin)
358   did not mention any issue of disparity and favoritism, however, Ricca Kunihiro, indicated
359   as well that she was being treated differently and becoming a victim of favoritism as a
360   Filipino employee, however, she did not provide specific details other than a clear
361   statement of disparity of treatment. Ricca advised me to be cautious about whom I
362   should trust as a supporter and she indicated having heard derogatory comments about
363   me without going into specific details.

364

365   Based on race and national origin, I have been denied equal employment opportunity in
366   assignment for reasons which are grounded on my disabling condition in not being able
367   to lift beyond heavy loads up to 25 lbs., race and national origin consideration which
368   were not required for the job.

369

370   With that, I was a victim of disparate treatment and adverse impact on my performance
371   review with the ultimate effect of appointment termination.  Ms. Lee's overwhelming
372   derogatory judgment of having precluded me from my equal rights for recognition in her
373   procedural management authority had adverse impact on my employment and
374   reputation in the workplace.

375

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

376  **Did you bring this disparate treatment to the attention of any other management,**

377  **labor, and/or EEO official?  If so, please identify the official and state when the**

378  **situation was brought to their attention and what action (if any) was taken by the**

379  **official.**

380

381  As I indicated in my answers to previous questions, the matter was directed to my

382  immediate supervisor, Ms Lee and I also discussed the matter with Gerald Stringer,

383  EEO Manager. He advised me to try to be self sufficient in order to minimize the

384  opportunity of having to deal with the same employees treating me with disparity. I was

385  also advised by the EEO Manager to provide him a copy of future documentation which I

386  provided to him in the form of my rebuttal to the unsuccessful and pre-textual review.

387
388                                  *Claim 3*
389
390      *Whether the Complainant was discriminated against on the bases of physical*
391      *disability (lower back strain and impaired sciatic nerve in right let, injury to chest,*
392      *neck and shoulders), race (Filipino), national origin (Philippines), age 46 (DOB:*
393      *November 16, 1957) sex (female) and/or reprisal when her reasonable*
394      *accommodation requests were denied?*
395

396  **Please explain when and how you made your request(s) for**

397  **accommodation(s) to include an explanation as to what accommodations were**

398  **requested and to whom.**

399

400  On or about 1st quarter of 2003, the following employees: Ms. Lee, Territory Manager,

401  Josie, Tina, Carlos, Valerie, Ruth were notified of my request for accommodation on my

402  restrictions to lift heavy loads. Specific details, however, was discussed with Stella Lee.

403

404  **Why were these particular accommodations necessary?  Were other alternatives**

405  **available?**

406

Page 14 of 19 Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

407   I explained to my work group that I had a prior industrial injury limiting my capacity to lift
408   beyond 5-8 lbs. The same work group was also notified of my low-back strain injury
409   requiring accommodations as outlined in periodic reports to them from the 1st quarter of
410   2003 up to August 2003 before appointment termination on 9/19/2004. The alternative
411   that was available was to have two people assist with the lifting or reduce the load of the
412   boxes. However, no remedial action was made.
413

414   **If you have not done so already, please provide your recollection of**
415   **management's response to your request(s) for accommodations.**
416

417   Ms. Lee, Territory Manager asked me personal questions including my age and she
418   stated that with SPEC/IRS I will not be accommodated from lifting heavy loads on my
419   disabling limitation in lifting and that I should look for another job. She also stated that I
420   should push myself harder.
421

422   As a result of my 2nd IRS work-related injury on July 23, 2003, I requested permission to
423   work from home while I was convalescing and the request was initially approved by the
424   acting Territory manager (Ms. Louise Seibel). Ms. Seibel did tell me that Ms. Lee would
425   be the final authority as to whether or not it would happen. Ms. Lee never got back to
426   me on the request. I believe this is further evidence of harassment and/or disparate
427   treatment against me based on my disability status.
428
429
430   _Claim 4_
431
432   _Whether the Complainant was discriminated against on the bases of physical_
433   _disability (lower back strain and impaired sciatic nerve in right let, injury to chest,_
434   _neck and shoulders), race (Filipino), national origin (Philippines), age 46 (DOB:_
435   _November 16, 1957) sex (female) and/or reprisal when on September 19, 2003,_
436   _her employment was terminated from the Internal Revenue Service during her_
437   _probationary period?_
438
439

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

440 **Please address the circumstances surrounding your having received the**
441 **termination letter. This should include an explanation as to why you believe the**
442 **action was disparate treatment against you based on race, age, physical**
443 **disability, national origin, and/or prior participation in the EEO complaint**
444 **process.**
445
446 In the chronological sequence of events, the disparity in treatment originated from the
447 fact that I needed accommodation for my disabling condition, heavy lifting restrictions
448 with prior injury and subsequently with my most recent low-back strain injury.
449 Accommodation was denied and it was the start of hostility and discrimination by age,
450 race, national origin which prompted me to initiate EEO report even prior to receiving
451 unsuccessful review that followed shortly after I have made reports of discrimination to
452 EEO Manager for San Jose office.
453
454 After the release of Medical report from Treating Doctor, Dr Sharma on my required
455 accommodation and release to return to work, I received the Termination Letter from
456 Irene Scandiffio, Area Director for SPEC.
457
458 I acknowledged that I was counseled on my job performance on June 13, 2003 through
459 the progress review letter but I provided a rebuttal to that document. From June 23,
460 2003 until my termination, I was unable to work due to a compensable injury suffered at
461 work. I was not given an ample opportunity to improve my work performance but was
462 terminated during my medical leave without a review of my limitations and without Ms.
463 Lee having conducted an in-person assessment of my injuries and making a
464 determination as to whether or not I could perform the essential job functions with or
465 without reasonable accommodations.
466
467 **If you have not done so already, please identify the employee(s) with whom you**
468 **are comparing yourself to include an explanation as to how they were treated**

Page _16_ of _19_ Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
| --- | --- | --- |

469   **differently in any similar situation.**

470

471   Other co-workers, Ruth Boring, Valerie Rodriguez, Josie Martinez, Tina Armendanz,

472   Louise Seibel, Carlos Camino, Mary Ronell, Gladys Nichols, and George Kwong were

473   never treated with hostility and verbal harassment and any accommodation that they

474   needed was approved without disparity in treatment.

475

476   <u>General Questions</u>

477

478   **If you have not done so, please identify any witness who may be able to**

479   **corroborate your testimony.  This should include specifics as to which part of**

480   **your testimony they should be able to address.**

481

482   Carlos Camino -  Disparate treatment in hostility.

483   Ruth Boring - Verbal Harassment and hostility in treatment, She was made aware of

484   disabling condition

485   Ricca Kunihiro – Disparity in treatment among Filipino workers within the Territory as

486   compared to other similarly situated employees.

487   Louise Seibel – Witnessed accomplishments in achieving goals for the job.

488   Josie – Witness (She was aware of my disabling condition in lifting )

489      -   Witnessed that E-file project was not properly assigned to me as a newly

490         hired employee. She is a Senior Specialist on E-file project for several years.

491      -   Witnessed growing hostility towards me including herself as influenced by the

492         management team without any remedial action made.

493   Tina  - Witness (she is aware of VITA projects I completed)

494   Valerie – Witnessed that assigned tasks on Data Entry on E-file was not justified and

495   that the project  was not part of SPEC Department that I was hired for.

496   James Kinsey – Can attest to his having declared that my getting the E-file project was

497   unfair due to my being a new employee and for not having received formal training on e-

498   file and the complexity of the project.

Page *1 7* of *1 9* Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
| --- | --- | --- |

499

500  **Please identify and/or provide any documents and/or records which you believe**
501  **are relevant to this case.**

502

503  All Medical reports from Occupational Medicine Doctor certifying disabling condition and
504  required accommodation, Work Status Reports submitted timely.

505

506  USDOL Reports
507  E-mail reports with a copy to EEO Manager, Audit trail reports on Harassment with
508  questions raised for further resolution.

509

510  **Please state how you have been harmed.**

511

512  I sustained low-back injury with long-term disabling condition, from which I am now
513  permanent and stationary with reoccurrence of residuals under control. My harm stems
514  from the fact that I have suffered the loss of employment and all of the benefits which
515  flow there from (wages including retroactive pay from the date of termination 9/19/2003,
516  all benefits ( Health, Insurance, Retirement, vacation hours earned ) promotional
517  opportunities, costs of administrative process etc.)

518

519  Furthermore, I have suffered non-economic damages consisting of severe emotional
520  distress, which has manifested through headaches, stomach aches, insomnia and other
521  physical ailments. I have lost my self esteem as my reputation and dignity as a person
522  and employee has been severely tarnished by the discrimination, harassment and
523  retaliation that I have suffered at the Agency.

524

525  Finally, my future employment status and professional reputation has been destroyed
526  with future employers in the public and private sectors.

527

Page 15 of 15 Pages

Form 5991 (Rev.6-81)

Affiant's Initials

| **A F F I D A V I T** | State of: California | County of: Santa Clara |
|---|---|---|

528 **What is your requested remedial relief?**

529

530 I request full reinstatement to my position, with payment of all back pay, all benefits, loss

531 of seniority and promotional opportunity including favorable employment reference and

532 an order mandating that I be given at least a satisfactory job performance, entitling me to

533 be brought on as a permanent employee and that I not be subjected to the

534 discrimination, harassment and retaliation that I suffered.

535

536

537 I have read the above statement, consisting of ___19___ page(s), and it is true and
538 complete to the best of my knowledge and belief. I understand that the information I
539 have given is not to be considered confidential and that it may be shown to the
540 interested parties.

541

542

543

544

545                              (Affiant's Signature)

546

547

548 Subscribed and (sworn to) (affirmed)

549

550 before me at San Jose, California

551

552 on this ___4ᵀᴴ___ day of August 2004

553

554

555

556 (Investigator's Signature)

557

558

Page 19 of 19 Pages
Form 5991 (Rev.6-81)

Affiant's Initials