UNITED STATES DISTRICT COURT

FILED

NORTHERN DISTRICT OF CALIFORNIA    2008 JUL 30 P 2: 55

SAN JOSE DIVISION

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

| | |
|---|---|
| Sado Labtis, | ) |
| | ) |
| | ) Case No. 07-3333 RS |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) **PLAINTIFF'S 1ST AMENDED** |
| | ) **COMPLAINT on Employment** |
| | ) **Discrimination -  Title VII of the Civil** |
| | ) **Rights Act of 1964   and   Rehabilitation** |
| | ) **Act of 1973** |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| U. S. | ) |
| | ) |
| Defendant | ) |

I.   INTRODUCTION

This is to pursue reinstatement of remaining employment discrimination claims which

involves  the violation of Title VII of the Civil Rights Act of 1964 that prohibits employment

discrimination on the basis of "race, color, religion, sex or national origin, and the

Rehabilitation Act of 1973 prohibiting discrimination against individuals with disabling

conditions.

## II.  BACKGROUND

1

2

3

4

5

6

7

8

9

10

In October 2002, plaintiff was hired as a Tax Specialist, a position at the time of hiring that specified tax educational outreach to the community. Plaintiff was required to conduct manual tasks, such as repetitive lifting of  boxes of laptop computers and boxes of brochures that were up to 25 lbs in weight.  Since plaintiff had previously suffered an injury in 2002 ( Chest, shoulder and neck pain with lifting limitation of  5 lbs) , referred to as musculoskeletal medical condition by Kaiser's Chief of Internal Medicine ,Dr. Sun , Ex II/A, plaintiff requested accommodations that would limit her lifting up to five pounds but that her IRS managers denied her request on or about March 2003.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Soon thereafter, plaintiff was subjected to disparate treatment, including hostile work environment, verbal hostility, racial segregation in  job assignments, heightened scrutiny of her job performance, and assignment to outreach programs where she was verbally told that because of her  race, she can only be targeted to outreach programs  for Filipino community, and that is  what she can only be good at because of the issue of race. Because of escalating hostility in the work place, disparity of treatment and failure to provide reasonable accommodation for  disclosed disabling condition, plaintiff  then made a written  comprehensive report to EEO manager in April,  EX I , after EEO Manager simply requested  plaintiff to wait. Clearly, the plaintiff made it imperative to EEO Manager and the Agency management about her intent to pursue EEO Complaint for all the RHA and Title VII violations with the E-mail, EX I. Further, plaintiff made follow-up to EEO management and EEO manager's Assistants, Ofelia Melendez and Sherita Jackson.

On or about May 2003, Acting Manager, Carlos Camino, noticed pervasive hostility and disparate treatment against plaintiff by management , shortly after all the EEO complaints have started. Further, Ruth Boring observed that plaintiff was being subjected to verbal hostility including shouting in hostility .

At this time, Ruth Boring recommended that plaintiff should do a follow-up report to the President of the Union, David Dean on or about the first week of June 2003 which was also the week where she suffered gradual disc herniation from escalating disregard for what should have been reasonably accommodated.

On or about the week of June 3, 2003, heavy lifting of boxes of computers up to 25 pounds loaded in a utility cart ordered by Tina Armendariz(Senior Tax Specialist / Acting Manager), gradually contributed to the low-back disc herniation. Damage in disc-herniation had already occurred before June 23 2003 injury of lifting one laptop computer with work folders on top of the laptop computer being lifted. It simply made the physical impact of the injury worse which had placed plaintiff on full medical leave.

On or about June 13, 2003, pre-textual unsuccessful performance report was issued. Prior to this report, there was never any progressive performance counseling issued to prove poor performance. Please note that the plaintif delivered results to the key elements of the job , EX III/a-e , in addition to other Exhibits from original complaint.

On June 23, plaintiff suffered another work injury that placed her on full medical leave with Doctor's prognosis ( dated August 2003 which was issued prior to September 19 retaliatory discharge), stating that plaintiff will be able to do regular duty in October.

Further follow-up with EEO Agency, Ofelia Melendez and Sherita Jackson was made in reference to the issues of failure to accommodate disabling condition. Shortly thereafter, adverse action of termination followed while on Medical Leave on September 19, after a series of protected activity.

I.      LEGAL STANDARDS

        JURISDICTION

Pursuant to Rule12(b)(6) of the Federal Rules of Civil Procedure:

Under RHA, which does provide federal employees with a right of action against their employers in disability discrimination suits.

1)  Jurisdiction of this Court is invoked pursuant to 29 U.S.C. #791 et seq. Section 791(b) obligates federal employers to provide reasonable accommodation for the handicapped and to develop and implement affirmative action plans for handicapped employees. Boyd v. U.S. Postal Serv., 752 F.2d 410, 412 (9th Cir. 1985). Section 791 (g) provides that " the standards used to determine whether this section has been violated in a complaint alleging no-affirmative action employment discrimination… shall be the standards applied under title I of the (ADA)."

Under Title VII of the Civil Rights Act of 1964, bars discrimination on the basis of race, color, national origin, sex and religion in the hiring, firing and terms and conditions of employment. Section 794a explicitly grants federal employees

subjected to disability discrimination a private right of action against the United States and adopts all the same remedies, procedures, and rights available to those alleging Title VII discrimination. Section 794 a(a)(1) provides: The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964.

2) Jurisdiction of this Court is invoked pursuant to 42 USC Sec.2000e-16), including the application of (42 U.S.C. 2000e-5 (f) through (k) shall be available, with respect to any complaint under 29 U.S.C #791, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives thereof or other appropriate relief in order to achieve an equitable and appropriate remedy . Further, the Civil Rights Act of 1964 authorizes for compensatory damages that vary with the size of the employer, when the alleged discrimination was the intentional violation under #501 of the Rehabilitation Act or an intentional failure to provide a reasonable accommodation to disability as required by the regulations implementing #501. Plaintiff is entitled to relief as justified by the arguments and circumstances presented herein. The primary reason of entitlement to relief is the fact that Plaintiff was retaliated against for complaining about discrimination, requesting a reasonable accommodation for disabling condition which was denied, filing a charge with a government agency and plaintiff was subjected to an adverse employment action with the termination on 9/19/2003.

### III.    Legal Standards continued

### VENUE

The employment practices hereafter alleged to be unlawful, Venue in the Northern District of California is proper in that some, if not all, of the wrongful acts alleged herein occurred within the County of Santa Clara.

### IV.    STATEMENT OF COMPLAINTS

1) Retaliatory discharge while on medical leave  due to prior protected activity on discrimination by the plaintiff  who is part of a protected class.

2) Plaintiff  was  denied  reasonable accommodation and  was subjected to disparate treatment, as a member of a specific race,  and hostile work environment which was pervasive. This reflected Title  VII and RHA  violations, whereby the plaintiff clearly expressed intent to pursue the matter, ( Ex I ) with EEO issues brought against the Management of the Federal Agency. Clearly, a comprehensive EEO complaint was launched by the plaintiff  with follow-up prior to the issuance of  pre-textual unsuccessful performance report and adverse employment action thereafter.

### V.    PRAYER FOR RELIEF

Plaintiff, moves in opposition to dismissal of any applicable claims asserted that demonstrates violation within the full extent of the law, including Prayer for

1  relief essential under Title VII remedies as outlined in page 4 and page 10 of the

2  Addendum dated 8/18/2007, as well as required Federal Agency compliance in line

3  with Federal Civil Rights Act , Rehabilitation Act of 1973 . Finally, Plaintiff requests

4  the Court to order Defendant to provide for remedies including compensatory

5  damages applicable within the full extent of the law. The required reinstatement and

6  payment of all back wages, including retirement benefits, reinstatement as a

7  permanent Federal employee including promotion, paid vacation and paid illness

8  hours, including Health Benefits, which is crucial to the healing of the Federal

9  Compensable injury sustained by the      plaintiff that resulted in a permanent

10  disabling condition, specifically referred to as low-back disc herniation,  Ex I, Ex Ia,

11  Ex Ib and Ex 4(Addendum to Original Complaint) by Dr Satish Sharma,

12  Occupational Health, Kaiser and Dr. Emeka NcheKwube.   Demand for relief

13  should be paid as reflected in the Prayer for relief from original   complaint and

14  addendum including the payment of the cost avoidance information   outlined in the

15  job offer reinstatement letter from the IRS Chief , Workers'   Compensation Center

16  in Washington D.C. for the amount of $453,445.00

17

18

19

20

21

22                    **VI   ARGUMENTS**

23

24  A)  Retaliatory discharge based on protected class activity  on discrimination.

25

26

27

Exhibit I proves that plaintiff had clearly communicated intent to pursue EEO

complaint     and requested  Federal agency to rectify the  failure to accommodate

which had prompted disparity of treatment and hostile work environment.

B) Retaliatory discharge based on protected activity on EEO reports made on disparate

treatment and hostile work environment.  There was a pattern of  racially

segregating comments that reflected a general prejudice toward plaintiff or

plaintiff's group. This is a direct evidence of discriminatory animus which was

pervasive enough as it affected plaintiff's work environment, and have probative

force. The agency engaged in this type of segregation and disparate treatment as

observed by another IRS employee, Rica Kunihiro,  who was similarly situated as the

plaintiff, and the same racial background .

C) Plaintiff's Employer Failed to engage in Interactive Process when accommodation

was requested. Agency declined to provide accommodation.

Once an accommodation has been requested, the employer should initiate an

interactive process with the individual. In Barnett v. U.S. Air Inc. 228 F.3d  1105(9th Cir

2000 vacated on other grounds,535 U.S. 391,122 S. Ct. 1516(2002), the court noted

that the interactive process requires employers to "analyze job functions to establish

the essential and nonessential job tasks." to identify the barriers to job performance"

by consulting with the employee to learn "the precise  limitations" and to learn "the

types of accommodations which would be most effective" Likewise, in Taylor v.

Phoenixville School District, 184 F. 3d 296 (3rd Cir 1999), the court stated that the

1st Amended Complaint
Case No. C 07 3333.– RS

interactive process " as its name implies, requires the employer to take some

initiative.". Further, the Taylor court noted, "the interactive process would have little

meaning if it was interpreted to allow employers, in the face of a request for

accommodation, simply to sit back passively, offer nothing. The Agency could have

shown good faith in the interactive process by "taking steps like the following: meet

with the employee who requests an accommodation, accept information about the

condition and show some signs of having considered employee's request, and offer

and discuss available alternatives when the request is too burdensome. Ex  II /C shows

that Agency failed to accomplish this step.


D)  Unsuccessful Performance report was pre-textual.

Plaintiff's performance delivered the key requirements of the job Ex. III(a-e), in

addition to prior Exhibits from original complaint. If there was a performance problem,

then the IRS should produce a counseling report signed by the plaintiff to show that 1)

there is truly a performance counseling that was documented  to prove a performance

problem prior to 6/13/03.  2)  the accepted  specific job on educational outreach is

what the performance counseling addresses   3) plaintiff was made aware of the

performance issue showing written document   with a signed performance counseling.

Further, if there is truly a problem, the management should use the more appropriate

word " poor performance ". Even the choice of words implies pretext in evaluation.

Employer's reason was a "pretext", the employer had another unlawful reason for its adverse action, this was demonstrated with racist comments by employer, IF pg 8,line 208 and different treatment of other similarly situated people, Filipino Tax Specialist, Rica Kunihiro, disparity of treatment with manual tasks primarily assigned similar to plaintiff's experience which unfortunately resulted in federal compensable injury.

E) There was no legitimate justification for the termination while the plaintiff was on Medical Leave.

    1) Employee never violated any rules. Plaintiff repeatedly requested for any written evidence to counter this point, but so far the Agency has failed to provide any evidence of violation.

    2) It is undisputed that the plaintiff is qualified for the position and that she performed and manifested productive results that were achieved for the position Ex 1-7,original complaint, Ex II and III. In fact the acting Manager, Louise Seibel had issued an e-mail to plaintiff to prove this point. Requirements for the position reflected plaintiff's accomplishments. Further, Dr Sharma and Orthopedic Surgeon, Dr Nchekwube both issued medical certification to show that plaintiff was able to work.

    3) There was never an indication of any staff reduction for the department. In fact, in the last meeting with the Senior Management team, there was indication of

additional manpower and expansion for the department. Further, it is undisputed that there was time to complete the probationary period.

### VII CONCLUSION

Therefore, the plaintiff should be awarded compensatory damages, because the discrimination was the intentional violation under the Rehabilitation Act or an intentional failure to provide a reasonable accommodation to disabling condition as required by the regulation implementing #501. Further under Title VII and RHA as a remedy for workplace discrimination, hostility and retaliation, plaintiff should be granted for what is outlined in the Prayer for Relief. The court should also consider the employer to pay front pay – compensation for future earnings lost, employee's court costs and legal fees.

Respectfully Submitted,

*M. Sado Labtis*

M. Sado Labtis

NOTICE IS HEREBY GIVEN that the Plaintiff has issued consent to a decision by the Magistrate Judge in this case No. C 07-3333 RS.

## CERTIFICATE OF SERVICE

1

2  This is to certify that the attached document :  1ST Amended Complaint on Employment
   Discrimination – Title VII and RHA  was  sent by mail to  the district office in which the

3  action is brought  and as follows unless otherwise indicated below.

4  **U.S. District  Court**

5  **Northern District  of California**

6  **280 South 1st Street, Room 2112**

7  **San Jose, CA  95113**

8

9  **Attorney General Michael Mucasey**

10 **U.S. Attorney General's Office**

11 **950 Pennsylvania Avenue NW**

   **Washington D.C. 20530-0001**
12

13

14 **Claire  T. Cormier**

15 **Assistant United States Attorney**

16 **U. S.  Department of Justice**

17 **Northern District of California**

18 **150  Almaden  Blvd.**

19 **Suite 900**

   **San Jose, CA 95113-2009**
20

21

22

23 **July 29, 2008**

24 _____

25

26 **M. Pumphrey/ sig**

27

1st Amended Complaint
Case No. C 07 3333 – RS

Ex. I

**Labtis Marilyn S**

---

**From:**        Labtis Marilyn S
**Sent:**        Tuesday, April 15, 2003 8:10 AM
**To:**          Stringer Gerald
**Subject:**     Equal Opportunity

Hello Gerald,

If at all possible today or tomorrow, I'd like to speak to you about the following issues of concern:

o Equal opportunity to train accurately and completely prior to evaluation on a given task. Is it fair to even be given the task outside of one's
   Division , outside of what you have accepted in a job contract, outside of one's experience & background ?

o Equal opportunity to a favorable work environment, condition, terms of employment , free from disparity of treatment, verbal abuse and hostility.

Your immediate  assistance in this matter is truly appreciated.

Thanks,

```
Marilyn S Labtis
Tax Specialist
Wage & Investment
Stakeholder, Partnerships,Education & Communication(SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124
```

10 10

# WORKERS' COMPENSATION APPEALS BOARD

## STATE OF CALIFORNIA

Ex II/A pg 1 of 2

# AWARD

AWARD IS MADE in favor of ___Marilyn Labtis_____ against

__Washington Mutual & Lumbermen's Mutual Cas Co__ of:
__Administered by Broadspire (Formerly Kemper)__

(A) Temporary disability indemnity in accordance with paragraph 2 above,

(B) Permanent disability indemnity in accordance with paragraph 3 above,

.. Less the sum of $ __150.00___ payable to applicant's attorney as the reasonable value of services rendered.

Less liens in accordance with Paragraph 7 above,

(C) Further medical treatment in accordance with Paragraph 4 above,

(D) Reimbursement for medical-legal expenses in accordance with Paragraph 5 above,

(E)

_9/ 2 /04_
Dated:

_____
Workers' Compensation Judge
WORKERS' COMPENSATION APPEALS BOARD

Copy served on all persons listed on
Official Address Record.

Date: _____

By: _____
        (Signature)

**Filed and Served on the parties or their attorneys/representatives in open court.___Other___ is ordered to serve all parties/lien claimants on the Official Address Record not present.**

Date: ___9/ 3 /04___ By: Lawrence Newman

2 of 10

DEPARTMENT OF INDUSTRIAL RELATIONS

EX II/A/092-2

rate Employee Benefits at SAS0106 or fax to (206) 490-2229

---

**ONFIDENTIAL   Physician's Statement of Disability**

de Corporate Employee Benefits with a physician's statement in advance of
your leave began. This statement or an equivalent statement may be
e leave as necessary. If no return to work date is indicated, an update must

_____ so days. Failure to comply may result in denial of your leave request and/or disciplinary action.

Employee's name (please print): _____     Empl. ID#: _____

*To be completed by the patient's health care provider:*

Patient's name (if other than _____ Iahtie _____    ationship: _____

The above named individual _____     (Milpitas office)
Indicate the reason that preve _____     *care provider is not to disclose the*
*underlying diagnosis without* _____

Neck, should___ & che _____        DR. CHIU
Pain in the ___k, le _____         KAISER
                                    MILPITAS
                                    OCC MED

_____ Car_____                                          _/5/02

Time loss authoriz_____ from: _____

Does the patient's __dition qualify as a serious health condition as defined by the federal Family and Medical
Leave Act (FMLA ____ see reverse for definition)   ☒ Yes        ☐ No

**For Pregnancy l_____**
Estimated date of ___th: _____     Actual date of birth: _____
Ending date of pre_____ncy related disability: _____     Or # of weeks: _____

**Return to work**
Date released for ___ilar work: __10-15-02__ (per) 10/5/02  for her work-related
Date released for __odified work: __8/5/02 - 10/5/02__          injury of 6/15/02

Specify hours/day __8 hours per day__          Days per week: _____

---

*Please indicate if ___ if the following restrictions apply or specify below:*
- No stooping, tw____ing, bending, squatting
- No pushing or p_____ing
- Minimal walk___
- Limit standing
- No repetitive m____n of _____
- Weight lifting ___abilities (lb.): 9-10  5 lbs  11-20 _____ 21-35 _____ 36-50 _____ 50+

- No use of the _____ hand
- No work at or above shoulder level
- No vehicle operation
- Other restrictions (specify in remarks)

3 of 10

# KAISER PERMANENTE® OCCUPATIONAL ACTIVITY STATUS

IF YOUR CONDITION GETS WORSE, SEEK MEDICAL TREATMENT

☐ PATIENT DISCHARGED AS CURED ☐ DIAGNOSIS *Low Back Strain (whiny症状)*

PLEASE SUPPLY A BRIEF NARRATIVE REPORT IF ANY OF THE FOUR BOXES BELOW APPLY:

☐ PATIENT WILL BE PERMANENTLY PRECLUDED FROM ENGAGING IN HIS/HER USUAL AND CUSTOMARY OCCUPATION
☐ PATIENT'S CONDITION IS PERMANENT AND STATIONARY ☐ PATIENT WILL HAVE PERMANENT RESIDUALS
☐ PATIENT WILL REQUIRE FUTURE MEDICAL CARE AFTER CONDITION IS PERMANENT AND STATIONARY

THE PATIENT HAS BEEN INSTRUCTED

*Marilyn Labatis*
*6976534*

| | |
|---|---|
| ☐ REMAIN OFF TODAY, RETURN TO WORK TOMORROW. FULL DUTY. | ☐ RETURN TODAY, FULL DUTY: NO LIMITS/RESTRICTIONS |
| ☐ REMAIN OFF THE REST OF THE DAY AND RETURN TO WORK ON: / / | |
| ☐ RETURN TO LIMITED WORK ON / / ESTIMATED DATE PATIENT CAN RETURN TO FULL DUTY: / / | |
| CAN STAND/WALK HOURS AT A TIME TOTAL HOURS/DAY | |
| SIT HOURS AT A TIME TOTAL HOURS/DAY REACH ABOVE SHOULDERS TOTAL HOURS/DAY | |
| DRIVE HOURS AT A TIME TOTAL HOURS/DAY PERFORM REPETITIVE HAND MOTIONS TOTAL HOURS/DAY | |
| LIFT/CARRY UP TO LBS TOTAL HOURS/DAY BEND-Y/N SQUAT-Y/N CLIMB-Y/N | |

*Employer: It is your responsibility to place the patient off work if you cannot accommodate the employee with these restrictions.*

OTHER LIMITATIONS: *OFF WORK TILL NEXT VISIT* *@1:45 PM*
*8-05-03 (........)*

DATE PATIENT CAN RETURN TO FULL DUTY: / / NEXT EXAM: *1+*

PHYSICIAN'S SIGNATURE: *(signature)*

TREATING PROVIDER AND DEGREE: *(........)* DATE SEEN: *7/30/03*

ADDRESS: TELEPHONE:

08144 (REV. 10-99)   PAGE TWO DISTRIBUTION: GREEN = MEDICAL RECORD • WHITE = PATIENT • PINK = ER/CLINIC • CANARY = INDUSTRIAL FILE

Ex II/c

## Stella Lee

**Territory Manager, San Jose Territory**
**Stakeholder Partnerships, Education & Communication (SPEC)**
**55 South Market St., HQ: 6600, San Jose, CA 95113**
**Office: 408-817-6554**
**VMS: 62500-19103**
**Fax: 408-817-6124**

-----Original Message-----
**From:**  Armendariz Tina
**Sent:**    Wednesday, December 24, 2003 8:21 AM
**To:**       Lee Stella
**Subject:** FW: Job Offer
**Importance:**     High

Stella,

I called Fred W. Phillips, from the Workers' Compensation Center. Here is what was discussed. He stated that you should wait until Debbie Corbin returns and discuss this matter with her further. She is expected to return to the office on January 7, 2004.

## Tina Armendariz
Senior Tax Specialist
55 S Market St MS6300
San Jose, CA 95113
(408) 817-6843
(408) 817-6124 Fax
Tina.Armendariz@irs.gov

-----Original Message-----
**From:**  Phillips Fred W
**Sent:**    Wednesday, December 24, 2003 8:10 AM
**To:**       Armendariz Tina
**Cc:**       Corbin Deborah M
**Subject:** Job Offer

Ms Armendariz:

This email reiterates our phone call of a few minutes ago. You are the acting manager for Stella Lee. Ms Lee has received a job offer package from my coworker, Debbie Corbin, in an attempt to return former employee LABTIS (Claimant) to duty following the Claimant's removal. You are responding to Ms Corbin's drop dead date for a response to this job offer. You have advised me that Ms Lee does not wish to return the Claimant to duty within this work unit.

If your work unit cannot accommodate the return of the Claimant, for whatever reason, then Ms Lee should request placement assistance from her superiors for the Claimant. Perhaps somewhere else in the employing jurisdiction suitable work is available.

As we discussed, the Claimant will continue to receive compensation until she is returned to duty or until we can demonstrate to the U. S. Department of Labor (DOL) that the Claimant has work capacity. The only way that the IRS can demonstrate to the DOL that the Claimant has work capacity is to return the Claimant for duty for at least 90 days. Sometime after the 90 day point the DOL will issue a determination that the Claimant does possess work

5 D 10
19 D

**Labtis Marilyn S**                                                  *Ex III/a*

| | |
|---|---|
| **To:** | Laura Obergfell |
| **Cc:** | Seibel Louise J; Martinez Jackie M |
| **Subject:** | RE: Stanford tax seminar |

Hello Laura:

Thank you for your update.

There will be two Senior Tax Specialists and myself to give the presentation. Louise Seibel and Josie Martinez from San Jose office.

We wanted to see if it's possible to have a rostrum that we can use for the presentation materials.

Would you happen to know approximately how many students are expected to attend?

Marilyn S Labtis
Tax Specialist
Wage & Investment
Stakeholder, Partnerships,Education & Communication(SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124


-----Original Message-----
From: Laura Obergfell [mailto:lto@stanford.edu]
Sent: Thursday, February 13, 2003 3:10 PM
To: marilyn.s.labtis@irs.gov
Subject: Stanford tax seminar


Dear Marilyn,

I wanted to provide you with a copy of our notice to the postdoctoral scholars about your visit on February 24th. Michael is on medical leave and I am unclear as to whether both of you are visiting (I believe you are) or just Louise is coming.

I will have a copy of the front pages of the 1040 and 1040-NR forms as a handout. Are you planning on bringing materials? I will have a table near the classroom for cookies and can provide space for handouts.

I am sending this on Friday, please let me know if I should make any changes for the program:
-----------------------------------------------------------------------------
------------------------------------------------

To our postdoctoral scholars:

Two tax seminars have been set for February 24, Monday. We have a senior tax specialist from the Internal Revenue Service coming to answer questions.

The first seminar is for U.S. citizens, permanent residents, and foreign nationals who file the 1040 form (resident aliens). It is from 3:30 - 4:30 pm in room M-112.

The second seminar is for foreign nationals (non-resident aliens) who file the 1040-NR and is from 4:30 - 6:00 pm in room M-112.

Room M-112 is a classroom at the School of Medicine in the main building, at the corner of Roth Way and Campus Drive. The entrance to the classroom

000065

**Labtis Marilyn S**

Ex Ⅲ/b

| | |
|---|---|
| **To:** | Seibel Louise J |
| **Cc:** | Lee Stella |
| **Subject:** | Blweekly Report |

Hi Louise, thanks very much for the commendation and encouragement.

I'd be glad to help with both scheduled presentations. The one for Calworks is in my neighborhood,so, I can cover that. I need to know the scheduled time and location.

Let's meet on Tuesday or Wednesday morning to finalize the details.

```
Marilyn S Labtis
Tax Specialist
Wage & Investment
Stakeholder, Partnerships,Education & Communication(SPEC)
Telephone (408) 817-6559
Fax (408) 817-6124
```

1

7 0 10

Ex III/c

April 10, 2003

Outreach to a group of about 130 International students was carried out successfully with very active participation from mostly foreign students who attended. I had a chance to meet the Director of International Affairs who gave us a warm welcome and sat down for a few minutes to listen to the presentation to a briefing on Federal Filing and also to State Filing. The manager for the California Franchise Tax Board, Sacramento office was also present to give an overview of State Filing requirements.

Most of the questions that were raised by the foreign students that I spoke to pertains to investment accounts which were taxable based on the classification of what constitutes effectively connected items. The other question was in reference to interest income accounts with banks including overseas bank accounts. A question also came on documents to complete to have interest earned non taxable from a Financial Institution. Most of the students came in prepared with Form 8843 to show.

April 4, 2003

Earned income credit presentation that I had with the Employment Connection under the County of Santa Clara was accepted well by the participants and the host, Don Harris. I had technical difficulty at the beginning and Don had been very supportive to get everything going. The lap top computer apparently takes a few minutes to reflect messages as it tries to identify components from a different location according to the IT specialist who checked my computer. I wanted to reiterate as well that the in Focus machine for the PowerPoint presentation was not dropped or operated by force to ruin the entire system. It was fully functional from start to finish of the presentation. There were about 45 participants to the EITC presentation at the Plumas location for Employment Connection.

Don Harris expressed interest to have other presentations to be made for more schedule that will come up in a couple of months. He indicated also that he may want to look into specific groups that maybe able to take advantage of a job loss presentation.

8 of 10

Labtis Marilyn S

Ex IN / d

**From:**       Labtis Marilyn S
**Sent:**       Thursday, May 08, 2003 8:31 AM
**To:**         Lee Stella
**Subject:**    BIWEEKLY REPORT ENDING MAY 9 2003

BIWEEKLY REPORT
Marilyn Labtis
May 9, 2003

Increase filing compliance by increasing filing assistance and awareness of Taxpayer issues and services i.e
VITA programs, EITC eligibility criteria among low income taxpayers with primary focus on specific
community groups.

I had a chance to meet with a branch Vice President for a former Cal-Fed bank on May 6, to determine what the
current needs are as far as community based partnerships in retail branches for banks. She indicated that there is
an interest in promoting bank products to the community particulary loan products in different areas under
Community Reinvestment Act including areas that are at a disadvantage in income level due to downsizing.She
also indicated that there is a tremendous need for financing at this time and that consumers should take
advantage of the reasonable rates and use it for asset building projects. One major product that is heavily
promoted at this time is equity line of credit and consumer accounts like checking and savings. A potential
partnership with retail banks would be in partnering with them in reaching out to the taxpayers to open accounts
or loan products and at the same time be aware of tax services and eligibility requirements for EITC Child Tax
Credit or whatever tax issue that needs to be promoted to create awareness in the community at a given time. To
establish partnerships with the various retail branches, the branch VP suggested to meet with their marketing
officer who establishes promotional packages to the community for specific projects.

BO 1: Rapidly migrate the legacy VITA programs to self-sufficient VITA programs, while maintaining current
high quality return preparation.

QPID report was compared to Project A which represents the different VITA locations, TCE and AARP.
Various locations that have not been updated since 2001 or 2002 were also included in a new Spreadsheet in
order to determine the total number of locations that should match the QPID report from the National office.
This will be reviewed by the staff in the next meeting on May 8 to finalize the QPID Listing as far as which
ones should be kept permanently on data base for the next filing season. At the same time, the staff will also
finalize a review in needed list of locations to be deleted to cover both VITA and AARP.

9 ʊ 10

**Labtis Marilyn S**                                                          EX Ⅲ / E

| | |
|---|---|
| **From:** | Labtis Marilyn S |
| **Sent:** | Friday, May 02, 2003 12:57 PM |
| **To:** | Martinez Josie G; Camino Carlos; Armendariz Tina; Seibel Louise J; Boring Ruth L |
| **Cc:** | Lee Stella |
| **Subject:** | RE: Speaker request |

**Good Afternoon!**

**I would be glad to do the  speaking engagement myself on May 22nd, however, I will be in Laguna Niguel for Face to Face Marketing.**
**So, what I will do is to try and find a volunteer speaker,& provide the information  to cover this assignment for Santa Theresa High School.**

**Carlos, if you have the map and details for this request, you can pass it on to me.**

**Thank you,**

**Marilyn Labtis**
**Tax Specialist**
**W & I SPEC, San Jose**
**(408) 817-6559**

-----Original Message-----
| | |
|---|---|
| **From:** | Martinez Josie G |
| **Sent:** | Friday, May 02, 2003 8:56 AM |
| **To:** | Camino Carlos; Armendariz Tina; Boring Ruth L; Labtis Marilyn S; Seibel Louise J |
| **Cc:** | Lee Stella |
| **Subject:** | RE: Speaker request |

**I think it would be a good idea for Marilyn to conduct the speakers request since she is the lead of the Understanding Taxes Program.**

**I am not available on the request date.**

**Thanks,**

*Josie G. Martinez*
Senior Tax Specialist
W&I, SPEC, Area 7, San Jose
(408) 817-6835

-----Original Message-----
**From:**   Camino Carlos

1

10 9 10

## NOTICE OF ADDRESS CHANGE

**Effective immediately, please forward all correspondence for M. SADO LABTIS to the**

**following address:**

**P. O. Box  2736**

**Cupertino, CA 95015-2736**

**Mobile Number:**

**(415) 297-1708**

7/29/08